# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF FLORIDA

**BARRY R. GAINSBURG**, *pro se*

Plaintiff,

v.

**THE FLORIDA BAR** and,
**FLORIDA SUPREME COURT,**
**JOSHUA E. DOYLE, ESQ** in his
official and personal capacity
as **Executive Director of**
**THE FLORIDA BAR and**
**LINDA I. GONZALES, ESQ** in her
official and personal capacity
as FL Bar Counsel of
**THE FLORIDA BAR**

Defendants.

CASE NO: TBA

**COMPLAINT FOR DAMAGES**
**AND INJUNCTIVE RELIEF**
**JURY TRIAL DEMANDED**



FILED BY _____ D.C.

OCT 0 2 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

1

## COMPLAINT

**COMES NOW**, the Plaintiff, **BARRY R. GAINSBURG,** ***pro se,*** who hereby sues the following named Defendants, **The Florida Bar** (hereinafter "TFB"), **The Florida Supreme Court** (hereinafter "FSC"), **Joshua Doyle, Esq.**, ("ED", "Executive Director" or "Doyle"), and **Linda I. Gonzales**, **Esq**. ("FL Bar Counsel" or "Gonzales individually and collectively, (each named party a "Defendant" and collectively the "Defendants") for relief caused by Defendants flagrant, intentional and malicious violations of the Plaintiff's US Constitutional, Federal Rights and Human Rights through engaging in the following causes of actions or economic cartel type enterprises:

(1) First Amendment of the Constitution applied to the States under the Fourteenth Amendment, including the right to free speech, religion, and assembly;

(2) Violation of the First Amendment Equal Protection Clause as applied to the States under the 14th Amendment;

(3) violations of the American Disabilities Act ("ADA"), 42 U.S. Code § 12101 et al.:

2

(4) Violation of Separation of Powers Doctrine from the Florida Constitution;

(5) Violation of Non-Delegation Doctrine by Defendants The Florida Supreme Court and The Florida Bar;

(6) The Florida Bar for Violation of The Sherman Act;

(7) The Supreme Court of Florida for Violation of The Commerce Clause; and

(8) Violations of Federal Civil RICO—Conduct of a RICO Enterprise, 18 U.S.C. § 1962(c) by Defendants The Florida Supreme Court, The Florida Bar, its Executive Director, Joshua Doyle, Esq. in his official capacity, and Linda Gonzales in her official capacity as Bar Counsel for Defendant TFB. These Defendants named herein are individually and collectively referred to as "RICO Defendant(s)".

## OVERVIEW OF ISSUES DERIVED FROM THE DELEGATION OF POWER TO THE FLORIDA BAR

The Florida Attorney Disciplinary process, which is solely controlled by the Florida Bar, has ultimately created a monopoly, within the state of Florida, through its evolving anticompetitive actions, which

3

continue to cause harm to the Plaintiff and the Public Interest. 1   It essentially boils down to an issue Court enforced attorney regulation versus self-regulation of member attorneys by members attorneys as currently the disciplinary system exists in the state of Florida.

The Florida Supreme Court has vested the power to The Florida Bar to regulate, investigate, and charge attorney discipline matters with no oversight from the Florida Supreme Court, until the determination of the severity of attorney discipline is at question as to whether the recommended discipline is appropriately proportionate for the attorney's alleged offense.

This type of power and lack of oversight over The Florida Bar, constituted by the alleged legal market competitors, allows for the

---

NY State has authorized the Appellate Division of State Supreme Court authority over the conduct of NY attorneys' rests with the and the discipline and grievance committees appointed by that court. This is not a member regulated organization.

Please note that this is a vastly different and much more progressive attorney disciplinary structure than employed by Defendant, The Florida Supreme Court.   Defendant The Florida Bar is an agency of the State of Florida and is controlled by licensed Florida attorneys. In other words, The Florida Bar is a member self-regulated.

Accordingly, all active Florida attorneys, including Plaintiff with his "Inactive Status", are mandated to register and submit to Defendant TFB's whims. This includes mandated "membership dues" for annual licensure – such as inactive status, at $175 per annum, whereby no such financial burden or additional disciplinary state-imposed sanctions would be suffered by Plaintiff for expressing his opinions had Defendants only permitted him to retire as Petitioned to the ED of TFB on multiple occasions.

creation of a monopolistic enterprise. This system does not protect the rights of its sole practitioners and small firms which do not contribute to or fund the Florida Bar's designated charities and other endeavors.

Given the role and privileges afforded to duly licensed attorneys, The Florida Bar's disciplinary process gives complete monopolistic control over the Florida legal market and stifles competition therein. Defendant TFB determines who can and cannot become or remain a duly licensed attorney; or become a judge; or determine market prices for legal services through price collusion and to further its Defendant "unified" TFB lobbing and  political agenda which may be contrary to that of its smaller and solo firm constituents.

The injury caused to any duly licensed attorney who is targeted by Defendant The Florida Bar's disciplinary process extends not only to irreparable harm, but also serves to cause harm to the public as Defendant TFB's Chapter 3 Rules predominantly protects Defendant, TFB's own power and vested economic interests, through its symbiotic and parasitic relationship with Defendant, FSC and wholly owned subsidiary, Florida Lawyers Assistance, Inc. ("FLA".

A brief examination of the history of the original intention of the Florida Supreme Court, in the vesting and delegation of this power to Defendant TFB, will serve to show the requirement of Defendant TFB mandatory bar membership for attorney licensure, as well as Defendant FSC's delegation of direct and discretionary (and discriminatory) oversight of Florida Bar Attorney Membership ("DFBAM") to Defendant TFB to oversee DFBAM discipline and regulation. Defendant FSC seemingly innocuous delegation of "absolute" control and dominion of DFBAM, resulted in the violative conduct that Defendant TFB  in contradiction to how Defendant The Supreme Court intended for all of the violative constitutional practices and illegal economic cartel and enterprises.  In turn, this behavior by Defendant FSC has enabled Defendant TFB to act without legal justification.  It allows Defendant TFB to act pon its own discretion, as well as insulates, shields and protects Defendant TFB from meaningful accountability of following the rules promulgated by Defendants FSC and TFB.


Defendant TFB has been permitted to discretionarily act as it does without regards to independent review or fair and independent

6

prosecution of Defendant's TFB's lobby based drafted rules in a selective, discriminatory and illegal manner taking place today in Florida.

Additionally, The Florida Bar continues to argue habitually in Federal Court that it somehow has immunity from liability for its actions since they are considered "an arm of the Supreme Court".

However, that constant defense is simply not absolute shield held by Defendants, without penetrability nor has any Plaintiff to the undersigned's knowledge, challenged the Defendants appropriately, with standing, on the issues set forth in this Plaintiff, Barry R, Gainsburg's Complaint.

To understand the assertion of TFB's disingenuous and specious arguments predicated on its tenuous interpretative overreach of 11th Amendment Immunity fails. Defendants' asserted defense should fail as their convoluted arguments falsely presume that Defendant FSC holds exclusive power over the authority delegated to it to "oversee" Defendant TFB.

***This is an incorrect assumption of Defendants. Defendant FSC simply does not have that exclusive authority, but rather***

<u>***concurrent jurisdiction with the Florida State Legislature as set***</u>

<u>***forth in greater detail herein.***</u>

Under Section 2(a) of the Florida Constitution it specifically states,

> "...***Rules of court may be repealed by general law enacted by two-thirds vote of the membership of each house of the legislature***."

Defendant The Florida Bar merely possesses rule making power for the regulation and procedures of the Florida Courts and practice of Florida law. Whereas the Florida Legislature possesses the FL constitutional power to draft and enact Florida statutes and laws. Hence, the language articulated in the FL Constitution demonstrates that the Florida State Legislature can repeal the rules promulgated by Defendants, TFB and FSC, upon their own legislative initiative by utilizing its authority to repeal Defendants laws and rules by active repeal of such in the Florid legislative chamber.

The FL Constitution provides a legislative posture creating a positive legislative inference from the Florida Legislature's silence. Not abdication or exclusion of its delegated Florida Constitutional rights.

In other words, the Florida Legislature possesses the jurisdiction, authority and ability to repeal procedures and rules promulgated by Defendants TFB and FSC.

These facts regarding Defendants TFB and FSC unarguable set forth a prima facie federal case. The merits of the subject matter claims should surely survive any misguided 11th Amendment immunity defense, at trial or presented during Defendants' Motion to Dismiss or Motion For Summary Judgment. Defendant TFB will stick to its past text book play calling to assert its patently wrong and self-serving assertions that Defendant FSC,  and only Defendant FSC  alone, possesses exclusive power and jurisdiction over Florida Member Attorney authority delegated discipline exercised by Defendants TFB and FSC to violate Plaintiff's, and those similarly situated.  However, this authority and jurisdiction to Defendant TFB was not granted by the state of Florida with the intent to exclude the Florida Legislature's current original jurisdiction.  Two things may true at once – Defendant TFB may have been given specific rule making functions for Florida Bar Membership purposes that does not inherently exclude the Florida State Legiskature from exercising its own jurisdiction and authority by repealing

9

disagreeable or repugnant to the Florida Code of Professional Responsibilities, and other similar delegated functions. This shared jurisdiction created concurrent authority over such as by the Florida State Legislature, not exclusive jurisdiction as habitually and wrongfully asserted by Defendants.

Defendant TFB should not be able to plead immunity, regarding the unconstitutional authority and extra constitutional actions exercised by it as delegated by Defendant FSC. Under the "non-delegation doctrine", the Defendant, The Florida Supreme Court, cannot delegate powers without appropriate or any supervision of Defendant TFB, as this would be violative of its judicial obligations.

Defendant TFB's has repeatedly abused its self-granted discretion, to discriminatorily deny  the Plaintiff's Petition for Permanent Retirement and subsequently filed Renewed Petitions for Permanent Retirement from Defendant TFB do not fall within the powers vested to Defendant TFB. This is addressed within the rules regulating attorney discipline and procedures of the Court. Accordingly, Defendants The Florida Bar and The Florida Supreme Court, should not prevail on any

defense predicated on 11ᵗʰ amendment immunity under the facts stated and causes plead herein this Complaint against all Defendants.

## HISTORICAL INTENT OF THE DELEGATION OF DISCIPLINARY POWERS TO THE FLORIDA BAR

In 1889, membership to TFB was voluntary. In the 1930s, TFB proposed mandatory membership to the Florida Supreme Court for the purpose of communication and discipline. However, the Florida Supreme Court rejected this proposal. In 1947, TFB proposed mandatory membership for the 2nd time, this time for the purpose of Lawyers receiving uniform education on changes in the law and legal procedures.

Based on these terms, the Florida Supreme Court granted mandatory membership. In 1955, TFB Board of Governors establishes "A Florida Bar Foundation", a 501(c)(3) non-profit. In 1976, it was determined that disciplinary authority held by the Florida Supreme Court and only preliminary screening was delegated to TFB. The Florida Bar v. McCain, 330 So. 2d 712, 714 (Fla. 1976). In 1992, the American Bar Association, published their McKay Report, recommendation that all

States have a separate disciplinary agency from their State Bars. This recommendation is not adopted by the State of Florida. 2

---

2    The American Bar Association strongly recommends the Need for Direct and Exclusive Judicial Control of Lawyer Discipline. To strengthen judicial regulation of the profession, it must be distinguished from self-regulation. Control of the lawyer discipline system by elected officials of bar associations is self-regulation. It creates an appearance of conflicts of interest and of impropriety. In many states, bar officials still investigate, prosecute, and adjudicate disciplinary cases. The state high court should control the disciplinary process exclusively. It should appoint disciplinary officials who are independent of the organized bar. The Court should oversee the disciplinary system with as much care and attention as it devotes to deciding cases.

DIRECT AND EXCLUSIVE CONTROL OF LAWYER DISCIPLINE
Despite the many reforms made in the disciplinary process in the last twenty years, there is significant distrust of the fairness and impartiality of self-regulation. The Commission finds an important distinction between judicial regulation and self-regulation in the area of lawyer discipline. Neither the inherent powers doctrine nor the need for professional independence provides a rationale for disciplinary functions to be conducted by elected officers of bar associations.

The disciplinary system should be controlled and managed exclusively by the state's highest court and not by state or local bar associations. This is necessary for two primary reasons. First, the disciplinary process should be directed solely by the disciplinary policy of the Court and its appointees and not influenced by the internal politics of bar associations. Second, the disciplinary system should be free from even the appearance of conflicts of interest or impropriety. When elected bar officials' control all or parts of the disciplinary process, these appearances are created, regardless of the actual fairness and impartiality of the syste
While the disciplinary system should be directly controlled by the state's highest court, bar associations can quite properly administer other component agencies of the expanded regulatory structure. Mandatory fee arbitration, voluntary arbitration and mediation, lawyer practice assistance, and other programs will require substantial resources. These programs are not affected by charges of conflict of interest or appearance of impropriety. It is entirely appropriate for the organized bar to cooperate with the Court in the administration of such programs.

Recommendation 5
Independence of Disciplinary Officials
All jurisdictions should structure their lawyer disciplinary systems so that disciplinary officials are appointed by the highest court of the jurisdiction or by other disciplinary officials who are appointed by the Court. Disciplinary officials should possess sufficient independent authority to conduct the lawyer discipline function impartially:

5.1 Elected bar officials, their appointees and employees should provide only administrative and other services for the disciplinary system that support the operation of the system without impairing the independence of disciplinary officials.

5.2 Elected bar officials, their appointees and employees should have no investigative, prosecutorial, or adjudicative functions in the disciplinary process.

5.3 The budget for the office of disciplinary counsel should be formulated by disciplinary counsel. The budget for the statewide disciplinary board should be formulated by the board. Disciplinary budgets should be approved or modified directly by the Court or by an administrative agency of the Court. Disciplinary counsel and the disciplinary board should be accountable for the expenditure of funds only to the Court, except that bar associations may provide accounting and other financial services that do not impair the independence of disciplinary officials.

Saliently, there are major issues of acts of impropriety undertaken whereby Defendant TFB's disciplinary process invests Defendant TFB's probable cause findings in the hands and direct control of a local Grievance Committee ("GCC"), made up of local practicing attorneys in the same exact market Defendant TFB transacts profit business pursuits attorney whichscheme at times complicates investigations of Defendant TFB's non supporters and subject such non-supportive TFB attorneys to discretionary and discriminatory retaliation enforced by Defendant TFB's disciplinary responsibilities over competitor Florida Member Attorneys.

Both the GCC and the Fl Bar member Attorney at question are competing within the same local economic market for clients. Again, logic dictates that economic self-interest will always prevail over independent monitoring. It's archaic that in 2023, a disciplinary process would allow Bar Member Attorney competitors to determine whether another attorney can practice law in the state of Florida. As well as

---

5.4 Disciplinary cand counsel and staff, disciplinary adjudicators and staff, and other disciplinary agency personnel should be absolutely immune from civil liability for all actions performed within the scope of their duties, consistent with ABA MRLDE 12A.

https://www.americanbar.org/groups/professional_responsibility/resources/report_archive/mckay_report/

simultaneously exercising and administering disciplinary oversight over competitor TFB Member Attorney members in an independent and unbiased manner.

There are additional issues of lack of consistency and ambiguity within the Chapter 3 Rules of Discipline. These deficiencies allow Defendant TFB to further manipulate arguments to press their political agenda. Defendant TFB's actions result in disciplinary actions being instituted  against competitor TFB Member Attorneys who may be unpopular within these local committees controlled by Defendant TFB's purse strings or they may challenge the economic status quo.  Defendants do not like that.  At all,

Throughout time, Defendant TFB slowly accumulated more and more creeping control over the Florida attorney disciplinary process. As a result today we are simply left with a TFB Member Attorney friendly self-regulatory organization who target all those who are critical of Defendants TFB, FSC or their employees, agents and/or servants.

The interweaving of Defenant TFB with its own "prestigious echelon of self-anointed for a fee "Super Lawyers" who are forced to bill countless hours to justify their grossly overinflated invoices to their

respective customers from tall Babylon-type office towers, all while illegally and violatively controlling the market rate of legal services and attorney practices in the Florida legal community.

These self-anointed "Super Lawyer Firms", through there monopolistic legal interpretation of "exclusive" jurisdiction and immunity by Defendant TFB over the Fl Bar Member attorney practitioner of law in Florida. Defendant TFB has discretionary (and discriminatory) jurisdiction exercising discretionary, and often time discriminatory. Defendants exercise control over which potential member attorneys can and cannot practice law in the state of Florida.

As text book defenses are asserted, Defendants have and will exercising discriminatory discretion and then utilize their very own vague and ambiguous rules to justify Defendant TFB's violative and unconstitutional actions suffered by, the Plaintiff, and all similarly situated, for all such malicious actions against Plaintiff.

Through present day, The Florida Bar Foundation, a non-profit entity, has received various donations from attorneys, judges, law firms, and committees of Defendant TFB, as evidenced by public records. Most

of the cash donations are made by larger firms with vested political and lobbying interests with their respective self-interested agendas.

Furthermore, the Florida Bar Foundation, a purported "501(c)(3) non-profit" made grants back to the affiliated Defendant TFB, TFB Committees and TFB legal programs across the state of Florida, as evidenced in Florida public records.

According to The Florida Bar Journal3 , Vol. 78, No. 10 November 2004, Defendant TFB has a legislative program, giving it maximum freedom to pursue separate lobbying agendas to members, committees and sections of The Florida Bar. Defendant TFB will argue that these separate member sections and committees are voluntary to membership participation and payment of additional section dues, thus, there is no freedom of association issues per se on the face of its corporate governance.

By review of the public records. it (un)surprisingly reveals that Defendant TFB is responsible for budgeting and funding TFB's sections and committees. Defendant TFB, as dues charging organization is funded

---

3 The Florida Bar Journal is an affiliated propaganda arm directed, supervised, and controlled by Defendant TFB.

in parent or whole by the mandatory membership fees of Florida Attorney Members, whether their status is active or inactive.

According to the IRS.gov website, no organization may qualify for section 501(c)(3) status if a substantial part of its activities is attempting to influence legislation, commonly known as "lobbying". A 501(c)(3) The Florida Bar Journal organization may engage in some lobbying, but too much lobbying activity risks the loss of tax-exempt status with the IRS and subject the entity to federal and state taxation. Without further investigation, it is not clear the full extent of Defendant TFB's lobbying reach and influence.

Defendant, The Florida Bar has a "for-profit" insurance company where they purportedly sell Florida Bar Member Attorneys insurance to provide legal coverage to defend attorneys charged by Defendant TFB with disciplinary issues.

There is an implication leading Florida Bar Member Attorneys to believe those who do not participate are disadvantaged. Or if they financially support Defendant TFB's "for-profit" company, they will have an advantage or according special "immunity" from disciplinary proceedings since bringing disciplinary actions against such

participating attorney members would be harmful to Defendant TFB's bottom line. All you need to do is follow the money trail – that never lies.

Finally, affording Defendant TFB to weaponize their vague, ambiguous, and violative rules to determine who can and cannot practice law. The current Florida Mandatory Bar regime is untenable and must be ordered by the honorable Tribunal to cease. Otherwise, Defendant TFB will be free to continue to freely target Member Attorneys who stand loud and proud against TFB's various political and lobbying agendas, amongst other internal Member Attorney disputes.

Defendant TFB carries out this violative conduct by specifically targeting those solo or smaller practitioners of Florida law, by targeting and assassinating the public reputation and careers of said targeted attorneys. This oppression occurs because the non-TFB supporter member attorneys tenaciously advocate different political and philosophical positions.

Defendants TFB and FSC are solely intent on preserving the status quo of power and prestige – not low cost quality affordable legal services being offered to the Florida citizenry. This motivates and allows Defendant TFB to further its self-interested and self-serving political

18

agenda, which is beyond the Constitutional powers granted to it from the Defendant Florida Supreme Cour and violates Defendant TFB's non-profit IRS status.

To evidence Defendant TFBs abuse of its delegated power, we only need to investigate the financial statements created by Defendant TFB. We must investigate Defendant TFB's affiliated non-profit company's activities.

Defendant TFB's lobbying efforts through their member sections and committees, were created by Defendant TFB and Defendant FSC, to try and conceal the true nature of Defendant TFB and its Super Lawyer Member Attorneys anti-competitive and associated malicious behaviors occasioned on Plaintiff, and those similarity situated.

Defendant TFB's intentionally vague, ambiguous and self-serving rules, and the discretion afforded to Defendant TFB throughout its disciplinary process has been ripe with discriminatory actions being taken by Defendants against Mr. Barry R. Gainsburg, Esq. pro se.

Simply, we need only follow the money trail and political lobbying donations of Defendant, TFB and its constituent Board of Governors.

Allowing Defendant TFB to have complete control and dominion over Florida Bar Member Attorney discipline, provide limited means of a targeted attorney, such as the Plaintiff, who possesses limited financial and political resources, to contest various aspects of Defendant TFB's process during an investigation and thereafter.   Plaintiff seeks this honorable Tribunal to issue an injunction against Defendant TFB ordering it and its agents and its servants, to cease engaging in these violative practices against Plaintiff, and all those similarity situated.

This current broken and manipulated system allows Defendant TFB, to grasp onto jurisdiction over the Plaintiff without accountability or consequence of engaging in petty personal matters.   It allows Defendant TFB and its agents and servants to keep control over any incriminating evidence or misconduct alleged against Defendant TFB, such as FL Bar counsels Defendant Gonzales' habitual misconduct or her continual violations of The Florida Bar Rules, and simple lack of professional courtesy.

Defendants' ongoing actions, schemes, shenanigans, and criminal type enterprise clearly demonstrates an absolute and immediate need for

an impartial agency to oversee the actions of this State Agency – Defendant, The Florida Bar.

Defendant TFB has the power to create unfavorable filings against an accused attorney, print such publicly through its own funded publication outlet, The Florida Bar News, to lead the public through Defendant's own twisted narratives of facts to stigmatize accused targets attorneys as unethical, criminal and mentally ill because they simple don't agree with Defendants.

Defendant TFB engages in this conduct because (1) it is not accountability so it can do as it pleases; and (2) it is self-interested and focused on the protection of its political dominance and misdeeds of Defendant TFB and its minions.

Defendants and their minions and self-nominated "Super Lawyers" are encouraged, as well as solicited by Defendants TFB, Doyle and Gonzoles to file excessive and unjustified charges. All this being done while Defendants TFB, Doyle, Gonzales and the rest of Defendant TFB minions, are engaged in a veritable plethora of unethical behaviors themselves.  This is because of Defendants' TFB, Doyle and Gonzalez' hypocritical enforcement and discriminatory disciplinary policies.

21

Yet, Defendants and their minions continue and Super lawyers remain unaccountable and immune from embarrassment, disciplinary actions, or other requisite disciplinary measures or any consequences there from.   All these plots, plans and schemes of Defendants are intended to prevent the cessation of large "charitable donations" from rolling into Defendants' TFB's bank account or diminishing it's public prestige and pedigree.

These actions undertaken intentionally, maliciously, vindictively, and continually by all named Defendants continue to harm the public good, interest and welfare, as well as Plaintiff's happiness and economic damages  This is more likely to occur because there is no meaningful oversight or accountability by an independent authority over Defendant The Florida Bar.

The Chapter 3 Disciplinary Rules allow a process which has been previously successfully implemented to wrongfully and/or maliciously target an attorney, while simultaneously protecting "TFB Supportive" attorneys engaging in the same exact conduct.

Defendant The Florida Bar's self-serving conduct, or those similar behaviors exhibited by Defendant TFB's constituent governing members

are far more harmful to the Florida legal system in comparison to Plaintiff's alleged misdeed – a first-degree misdemeanor conviction for a bat exhibited for purposes of self-defense against a vigilante during the beginning of the covid Pandemic.   Plaintiff's misdeed is a matter of personal conduct.  It is not a matter of client facing complaints or other imminent or dangerous harm to the Florida public.

Apparently, there must exist some unexplained discriminatory reason those with "TFB Supportive" and "Super Lawyer" status are treated far more favorably by Defendants TFB and FSC, and its directors, board of governors and bar counsel.

Contrast this to the treatment by Defendants over those Florida Bar member attorneys who are not super lawyers (a purchased endorsement to create a sense of gravitas and legal achievement), or publicly critical of all of Defendant professional and personal conduct and conflicted interests in carrying out their duties and orders.

## HISTORY OF INTENT BEHIND RULE 1-3.5 RETIREMENT

The Supreme Court of Florida delegated certain power to The Florida Bar for the purpose of improving justice and advancing the science of jurisprudence. 4

However, to fully understand the intent behind Rule 1-3.5, we must look to the historical amendments that have been approved over time.

In 1986, Rule 1-3.5 for Retirement restricted attorneys who were less than 70 years old and had not practiced for 35 years, as well as those deemed to be disabled to the extent, they could no longer practice law. 5 Moving forward into 2001, Rule 1-3.5 expanded eligibility for retirement to include any member of The Florida Bar. Along with this expanded eligibility came the right of the Florida Bar to subject a retired member. to disciplinary actions for acts committed before their effective date of

---

4 Ch. 1 Rule 1-2

5 RULE 1-3.5 RETIREMENT IN 1986 *Retirement.* Any member of The Florida Bar who shall have attained the age of seventy (70) years of age or who shall have practiced law in the State of Florida for thirty-five (35) years or who shall establish under rules of procedure adopted by the board of governors that the member is physically disabled to the extent that the member cannot engage in the practice of law may retire from The Florida Bar upon certification by the board of governors that such member meets the requirements of this rule and thereupon, unless again admitted or reinstated, shall not practice law in this state. A retired member shall be entitled to receive such other privileges as the board of governors may authorize. The Fla. Bar re Rules Regulating The Fla. Bar, 494 So. 2d 977, 979 (Fla.), opinion corrected sub nom. The Fla. Bar Re Rules Regulating The Fla. Bar, 507 So. 2d 1366 (Fla. 1986)

retirement. Further, the option for a retiree to be reinstated for membership after effective retirement was added.6

Some years later, in 2012, a specific status known as "permanent retirement" was added as an option if the Florida Bar attorney member seeking retirement had no intention to ever have their license reinstated in Florida. Under this rule, those Florida Bar member attorneys are permitted to petition for this Permanent Retirement Status.

The consequence of such selection is the licensed attorney will be barred from seeking their license reinstated to practice Florida law. This further prevents the Permanently Retired Florida Member attorney from presenting any potential harm or threat to the public in a licensed attorney capacity. Any retirement status, not considered permanent

---

6 RULE 1-3.5 RETIREMENT IN 2001 Any member of The Florida Bar may retire from The Florida Bar upon petition <u>or other written request</u> to, and approval of, the board of governors. A retired member shall not practice law in this state except upon petition for reinstatement to and approval of the board of governors; the payment of all membership fees, costs, or other amounts owed to The Florida Bar; and the completion of all outstanding continuing legal education or basic skills course requirements. A retired member shall be entitled to receive such other privileges as the board of governors may authorize.

A retired member shall remain subject to disciplinary action for acts committed before the effective date of retirement. Acts committed after retirement may be considered in evaluating the member's fitness to resume the practice of law in Florida as elsewhere stated in these Rules Regulating The Florida Bar. Amends. to Rules Regulating The Fla. Bar, 795 So. 2d 1, 4 (Fla. 2001) (a) Eligibility for Reinstatement. Members who have retired, been delinquent in the payment of membership fees, or been delinquent in continuing legal education requirements for a period of time not in excess of 5 years are eligible for reinstatement under this rule. Time shall be calculated from the day of the retirement, membership fees delinquency, or continuing legal education delinquency.

could seek readmission through application to the Florida Board of Bar Examiners.7

Most recently in 2023, Rule 1-3.5 for Retirement remains the same but added the requirement for approval from the Florida Bar's Executive Director and board of governors.8 Essentially, the status of *permanent retirement* now has a discretionary component vested in the Executive Director whose power derives directly from the masters he serves, Defendant The Florida Bar.

This retirement option has the same effect as if permanently disbarred in that the consequences are the exactly the same - that attorney would never be eligible to become licensed to practice Florida

---

7 RULE 1-3.5 RETIREMENT 2012 First, the Bar proposes amendments to rule 1–3.5 (Retirement) to specifically authorize permanent retirement from the Bar. It also recommends related amendments to rule 1–3.7 (Reinstatement to Membership), which would provide that members who have permanently retired are not eligible to seek reinstatement under the rule but may seek readmission through application to the Florida Board of Bar Examiners. While we adopt these amendments to the extent, they allow members to seek permanent retirement, we have modified the Bar's proposal to make clear that any member granted permanent retirement is thereafter ineligible to seek reinstatement or readmission to the Bar. In re Amends. To Rules Regulating The Fla. Bar (Biannual Rep.), 101 So. 3d 807, 808 (Fla. 2012)Any member of The Florida Bar may retire from The Florida Bar upon petition or other written request to, and approval of, the executive director. A retired member shall not practice law in this state except upon petition for reinstatement to, and approval of, the executive director; the payment of all membership fees, costs, or other amounts owed to The Florida Bar; and the completion of all outstanding continuing legal education or basic skills course requirements. A member who seeks and is approved to permanently retire shall not be eligible for reinstatement or readmission. A retired member shall be entitled to receive such other privileges as the board of governors may retired member shall remain subject to disciplinary action for acts committed before the effective date of retirement. Acts committed after retirement may be considered in evaluating the member's fitness to resume the practice of law in Florida as elsewhere stated in these Rules Regulating The Florida Bar.

If the executive director is in doubt as to disposition of a petition, the executive director may refer the petition to the board of governors for its action. Action of the executive director or board of governors denying a petition for retirement or reinstatement from retirement may be reviewed upon petition to the Supreme Court of Florida. In re Amends. To Rules Regulating The Fla. Bar (Biannual Rep.), 101 So. 3d 807, 811 (Fla. 2012)

8 Rule1-3.5 (f) Referral to Board of Governors. If the executive director is in doubt as to disposition of a petition, the executive director may refer the petition to the board of governors for its action. (g) Review of Disposition. Action of the executive director or board of governors denying a petition for retirement or RRTFB August 21, 2023, reinstatement from retirement may be reviewed on petition to the Supreme Court of Florida

law again, with the exception of action taken by The Florida Bar Board of Governors.

Permanent Retirement Status in Florida does not have the negative stigma attached to it, compared to being stain of permanent disbarment by a state. Especially, when said state of Florida Defendants maintain NO LEGITIMATE current compelling exercise of state or police power reason or interest to do so, other than to oppress him.

Florida Defendants continue to punish, to be punitive and to maliciously abuse Plaintiff's rights in overseeing his professional legal responsibilities Florida, directly attributable to Defendants vindictive acts. Such acts and deeds have never previously imposed any past TFB member attorney such as attempted against the instant Plaintiff.

Defendants only seek to try and crucify the I, without moral or legal justification to do so. Plaintiff not only prays every night to Jah for justice and freedom, as Mr. Gainsburg was forced to purport such demanded fidelity and overt loyalty to all named Defendants herein.

Truth be told, my criminal matter, was decided by an impartial jury of six (6) tried and true peers of mine from Broward County, decided that

out of the 13 original overcharges filed against the I, it was adjudged by the jury that I, the Plaintiff, was guilty of a lesser included misdemeanor, which was two levels reduced from the original rogue Hollywood Police filed charges.

The Hollywood Police, The Broward Sherriff's Department and The Broward County Court extended I no favors because of my active TFB member attorney status. Candidly, just the opposite.

No matter, I am accountable for defending myself from what I believed to be an imminent and existential threat pon my being. Nothing more, nothing less.

Defendants' actions regarding the Plaintiff were perpetrated vindictively and purposefully by Defendant TFB carried out by Defendant Florida Bar and its Executive Director, Defendant Josh Doyle, and its Staff Counsel, Defendant, Linda I. Gonzales against I-man. Defendants all have demonstrated a discriminatory purpose by punishing the FL Bar attorney member that is different from all the other FL Bar attorney members. Rastafari stands alone.

TFB members who don't curry Defendants favor or are light in their "donations" or engaged in critical analyze or publicly (or privately) criticize Defendants or provide Defendant TFB's with the "charitable" funding it so craves are treated as disadvantaged TFB members. These truths create and promote a veritable plethora of abusive behavior. All named Defendants herein should be subject to this honorable Tribunal's jurisdiction to impose their rehabilitation or permanent replacement.

## SUMMARY OF FACTS GIVING RISE TO THIS COMPLAINT

The Plaintiff's current disciplinary investigation with Defendant, The Florida Bar, arose while he was successfully completing his then current probational terms with TFB. The subject investigation commenced after the Plaintiff was arrested on allegations unrelated to his practice of law. The Plaintiff was adjudicated and found guilty of violating F.S. 790.10, a first-degree misdemeanor.

The Plaintiff provided notice of his arrest to Defendants TFB and Gonzoles in July 2020. Please recall that all Broward County Criminal Court proceedings and functions were retarded due to precautions implanted for preventing the spread of the Corona Pandemic. Plaintiff's

arraignment was held thereafter in August by the Broward Criminal Court.

The Plaintiff fulfilled all the conditions of his misdemeanor count probation and was provided early termination of such requirement because he was deemed by his probation officer, and the court to present no threat to the public.  The plaintiff does not, nor has he ever owed any restitution to any party, clients, Florida Legal Assistance, Inc. or any of the named Defendants. At the time of the Plaintiff's arrest, he was a member in Good Standing with Defendant TFB.

The nature of the pending disciplinary investigation is unrelated to the actions that resulted in the Plaintiff's probation with TFB. The Plaintiff, as of February 2021, successfully fulfilled all probational terms with Defendant TFB and was considered rehabilitated. Plaintiff received a letter from Defendant TFB closing out the aforementioned matter.

**"bar discipline exists to protect the public, and not to 'punish' the lawyer." Bar disciplinary proceedings are not of penal nature, but rather are remedial so as to protect public rather than punish lawyer…… West's F.S.A. § 914.04;  U.S.C.A. Const.Amend. 5.DeBock v. State, 512 So. 2d 164 (Fla. 1987)The**

**Fla. Bar v. Temmer**, 753 So. 2d 555, 561 (Fla. 1999) *DeBock v.*
*State*, 512 So.2d 164, 167 (Fla.1987) *Florida Bar v. Lord*, 433
So.2d 983, 986 (Fla.1983)

During the TFB's investigation, the Plaintiff voluntarily closed his law
firm, stopped taking clients, and made voluminous efforts to petition for
his permanent retirement to practice Florida law. The effect of a
permanent retirement would permanently cease any ability for the
Plaintiff to practice as a Florida licensed attorney presently and in the
future.

However, for reasons still a mystery to the Plaintiff, and his numerous
counsels, Defendant TFB refused to approve any of Plaintiff's renewed
petitions for permanent retirement.

Defendant TFB, while continuing to advance its investigation forward,
unnecessarily driving up attorney fees, costs and wasting his precious
time. The only legal argument made by Defendant TFB to validate their
denial of the Plaintiff's permanent retirement was justified under the
need to impose discipline so the state of New York, where the Plaintiff
holds a law license, would not lose reciprocal discipline.

As back then, it is clear under New Yorks rules of attorney discipline, NY does not need to even entertain or accept the reciprocal discipline doctrine imposed by a foreign state, Florida.  The Defendants, TFB, FSC. Doyle and Gonzales determine discipline under a discretionary and discriminatory manner pursuant to their own biased and cartel like treatment of Florida state rules.

Thus, denial of the Plaintiff's petition to permanently retire, and renewed Petitions sent to Defendant ED could only serve as a punishment and a sign of vindictiveness.  Especially given the truth that the Plaintiff has continued to undertake eff to resolve this matter of personal conduct with Defendant TFB on several occasions.

Defendant TFB, and its ED, Board of Governors, agents and servants, are not concerned with Plaintiff's demonstration that he is capable of current or future successful Florida Bar membership attorney rehabilitation.

Additionally, the Plaintiff alleges in this complaint various claims the actions of the Defendant(s) have engaged, in that have caused harm and deprived him of his Constitutional Rights, his Human Rights and other Federal Question claims that will be discussed in more detail herein.

## FACTS

1. On November 16, 2017, PLAINTIFF, entered a Consent Judgment with TFB that was approved by The Florida Supreme Court, which included a 3-year probation, which included a clinical rehabilitation contract, recommended testing, and recommended treatment and therapy, in result of the PLAINTIFF's conduct while acting as an Attorney.

2. On February 23, 2021, PLAINTIFF's probation with TFB was closed out, as he was determined rehabilitated after he successfully completed his 3-year probation and treatment with Dr. Weinstein, under the FLA, as required by The Florida Bar.

3. On April 6, 2020, while in his last year of probation and treatment, PLAINTIFF was arrested and adjudicated guilty on October 28, 2022, of one (1) misdemeanor count. October 31, 2022, he was sentenced to five days in jail and six months of probation for Improper Exhibition of a Dangerous Weapon, in violation of Florida Statute 790.10

4. In April 2023, as a condition of probation, Plaintiff was ordered to have a psychological evaluation and any necessary treatment. The

Plaintiff submitted himself to Henderson Healthcare and nothing remarkable about his medical or mental condition was noted by the medical staff.9.  Plaintiff, successfully, was determined rehabilitated from his criminal conviction, and granted early termination of his probation.

5. On July 15, 2020, PLAINTIFF, reported his arrest to The Florida Bar, where he held a license in good standing to practice law. Plaintiff was not formally arraigned and read the charges brough against him until August 5, 2020.   Plaintiff explained the circumstances surrounding his arrest directly to Defendant Gonalez who works for Defendant TFB.

6. On that very same day, July 15, 2020, Defendant Gonzales, without further comment nor inquiry, expeditiously issued a deferral of the investigation placing such on monitor status until the pending court matter was resolved.   Plaintiff kept Defendant Gonzales abreast of ongoing developments throughout the two and a half year proceedings. These include:

---

9 Plaintiff provided a copy of the psychological reports prepared by Henderson Healthcare to Defendants FL Bar Counsel Gonzalez and the Florida Bar. The FLA notified Plaintiff that he would need to seek an evaluation from one of FLA's authorized licensees at a cost of $2,100 to be borne by the Plaintiff.  Plaintiff's prior FLA evaluation conducted in 2017 was conducted for free ($0.00).

    A. Plaintiff alerted Defendant Gonzoles that his ankle monitor restriction had been lifted.

    B. Plaintiff notified Defenant Gonzoles that several of the charges had been dropped or reduced in charging severity.

    C. Plaintiff alerted Defendant Gonzoles the date of his scheduled Trial, and then notified her of its rescheduled case.

    D. Plaintiff advised Defendant Gonzoles that he was attending weekly FLA group therapy sessions with Dr. Weinstein.

    E. Plaintiff provided Defendant Gonzoles with his court ordered complete psychological evaluation.

7. The matter was concluded with the criminal trial being conducted for five (5) days between October 24-28, 2022. On October 31, 2022, the Plaintiff was sentenced to probation with the condition of taking a psychological evaluation and paying fees and costs. There was no restitution involved in this personal conduct matter,

8. On November 4, 2022, PLAINTIFF, self-reported his conviction to The New York State Bar, where he held a license in good standing to practice law.

9. On November 6, 2022, Defendant TFB actively resumed the suspended disciplinary investigation concerning Plaintiff's misdemeanor conviction from the preceding week.

10.     On December 31, 2022, the PLAINTIFF voluntarily took steps to permanently dissolve his law firm with the Florida Secretary of State and he ceased accepting or working on behalf of any Florida legal clients.

11.     On January 16, 2023, The New York Bar, commenced a disciplinary investigation, concerning PLAINTIFF's self-reported misdemeanor conviction.

12.     On January 19, 2023, Plaintiff's treating therapist and physician both determined the results of the stress the PLAINTIFF subject to and was exacerbated by the maliciously perpetrated by Defendants, collectively, and individually, negatively affecting the PLAINTIFF's mental health condition. Actions taken by the DEFENDANT(S) include:

(i)     Failing to allow Plaintiff to continue using the previously approved FLA licensed therapist Dr. Weinstein, who had a then existing four (4) year relationship with Plaintiff.

(ii)   Demanding Plaintiff undergo duplicative evaluations while charging Plaintiff unnecessarily costs with knowledge and receipt of recent evaluations deeming no concerning findings.

(iii)   Forbidding Plaintiff to have his choice in healthcare providers and forbidding Plaintiff a choice in treatment options.

(iv)   Forcing Plaintiff to only qualify for healthcare resources within TFB profit making and self-dealing entity- FLA.

(v)   On March 28, 2023, PLAINTIFF filed his first Petition for Permanent Retirement.

(vi)   On April 6, 2023, Defendant TFB through Defendant Executive Director Doyle denied Plaintiff's Petition for Permanent Retirement without providing any written legal or case law derived rationale other than it was denied.

(vii)   In the appeal of Plaintiff's Petion for Permanent Retirement from Defendant TFB brought before Defendant FSC, TFB argued that it needed to impose direct discipline and jurisdiction over the Plaintiff. By doing so Defendant

TFB's direct discipline could be similarly imposed on Plaintiff in NY equivalent to the proposed disproportionate Florida disciplinary sanctions sought against Plaintiff.

(viii) PLAINTIFF, filed six (6) additional renewed Petitions for Permanent Retirement with Defendant TFB, approximately on a monthly basis with Plaintiff's last renewal attempt dated September 11, 2023. Plaintiff's subsequent Petitions for Permanent Retirement were all denied By Defendants TFB, Doyle and Gonzolez. Defendants TFB, Doyle and Gonzoles denied such without providing Plaintiff or his co-counsel any, written or verbal, reason for such discretionary or discriminatory denials.

(ix) On July 14, 2023, the same day Plaintiff received notice of Defendant FSC's order denying his appeal of Defendant TFB's denial of his first Petition for Permanent Retirement with TFB.   PLAINTIFF filed for inactive status with Defendant TFB after concluding that his FL Bar license registration status and retirement options were limited. Despite experience, Plaintiff continue to Petition

Defendants monthly with renewed Petitions for Permanent Retirement in the hope of being set free by Defendants.

(x)     On July 14, 2023, PLAINTIFF paid the annual bar membership dues of $175.00, despite his attempt to gain approval to disassociate from this association.

(xi)    On September 15, 2023, the PLAINTIFF, provided notice of the intention for filing this federal lawsuit, in an attempt to allow the DEFENDANT(S) another opportunity to grant his Petition for Permanent Retirement to avoid constitutional violations of the PLAINTIFF guaranteed rights.

(xii)   Within this notice, the PLAINTIFF also informed the DEFENDANT(S), that he could not support TFB for areasons that violated his right to freedom of association and was also causing harm to his mental health condition. However, none of the DEFENDANT(S) responded or addressed the issues brought to them by the PLAINTIFF.

(xiii) On September 20, 2023, TFB Prosecutor, Linda Gonzalez, Esq., informed the PLAINTIFF, that his disciplinary investigation has now been moved to the Grievance Committee for the determination of probable cause alleging violations of the following rule violations: 3-4.3 (Misconduct and Minor Misconduct); 3-4.4 (Criminal Misconduct); 3-7.2(c) (Notice of Institution of Felony Criminal Charges) (Any member of The Florida Bar who is the subject of a felony criminal charge must notify the executive director of The Florida Bar of the charges within 10 days of the filing of the indictment or information and include a copy of the indictment or information); 4-8.4(b) (Misconduct) .

(xiv) On September 20, 2023, the staff from the NY Grievance Committee for the 10th Judicial District, informed the PLAINTIFF, that his disciplinary investigation was referred over to the NY Appellate Court, Second Department for a determination of a finding for probable cause.

(xv)   On September 15, 2020, PLAINTIFF wrote a letter to TFB Prosecutor, Defendant Linda Gonzalez, Esq., requesting an explanation as to why TFB is continuing to spend time and money, on an issue that could have been resolved by granting the PLAINTIFF's permanent retirement petition, Plaintiff cited various rules and case law demonstrating Defendants attempt to punish the PLAINTIFF, rather than rehabilitate him, as against the intent of the Fl. Bar Rules of Discipline.  The PLAINTIFF had and continues to voluntarily requested approval of his renewed Petitions for Permanent Retirement from Defendant Essentially the Plaintiff has taken steps to never engage in the practice of Florida Law again.

(xvi)  After multiple efforts by the PLAINTIFF, to retire his license, which would have allowed him to disassociate from TFB's association and ongoing jurisdiction. However, DEFENDANT(S) continue to plot and conspire to hold the Plaintiff  to attorney standards by refusing to grant his petition for permanent retirement from the Defendant

TFB. They have engaged in restricting him from freely stating adversarial opinions against the DEFENDANT(S) by finding him in violation of rules in his efforts to exercise his right to free speech.

## II. THE PARTIES.

13.     Plaintiff, Barry R. Gainsburg, is a former Florida licensed attorney who now maintains inactive status in the state of Florida, who has an acute interest and desire to permanently retire from the practice of Florida law. Barry R. Gainsburg is prevented by Defendants from permanently retiring from Florida law practice.

14.     Defendant The Florida Bar is an agency of the state of Florida and controls within its sole discretion who is to be worthy of being licensed as practicing attorneys in the state of Florida. Defendant TFB purports itself to be "the organization of all lawyers licensed by the Supreme Court of Florida to practice law in the state.

15.     The Florida Bar's core functions are to: Regulate the practice of law in Florida; ensure the highest standards of legal professionalism in Florida; and protect the public by prosecuting unethical attorneys and preventing the unlicensed practice of law."

This enterprise may be served by serving its Executive Director, Joshua Doyle at 651 E Jefferson Street, Tallahassee, FL 32399.

16.   The Florida Supreme Court is the highest state court in Florida. Article V, Section 15 of the Florida Constitution states that it "shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted." It disciplines lawyers with its "official arm," Defendant, The Florida Bar. This Florida judicial branch of government may be served by serving its Chief Clerk at Florida Supreme Court, 500 South Duval Street, Tallahassee, Florida 32399.

17.   Defendant Joshua Doyle, Esq. is Executive Director ("ED") of Defendant TFB, is a Florida licensed attorney (FL Bar # 25902), and is required to observe The Florida Bar Rules of Conduct, and other laws existing in the state of Florida. ED may be served with process at his place of employment, 651 E Jefferson Street, Tallahassee, FL 32399, or wherever he might be potentially found.

18.   Defendant Linda I. Gonzalez, Esq. is a Florida licensed attorney (FL Bar #63910) who was assigned to prosecute the Plaintiff, whose serves her master Defendant TFB, at the local

43

division of The Florida Bar located in Sunrise, Florida. Gonzales is a Florida licensed attorney (FL Bar # 25902) and is required to observe The Florida Bar Rules of Conduct, and other laws existing in the state of Florida. She may be served with process at her place of employment, Defendant The Florida Bar, Ft. Lauderdale Branch Office, Lake Shore Plaza II, 1300 Concord Terrace, Suite 130, Sunrise, FL 33323 or wherever she might potentially be found.

### III.   **JURISDICTION AND VENUE**

19.     Plaintiff brings this lawsuit against all named Defendants seeking, requesting monetary relief and compensation against Linda Rodriguez, Esq., in her individual capacity and Joshua Doyle, Esq., in his official capacity as well as injunctive remedies against all Defendants' violations of Plaintiffs', Mr. Barry R. Gainsburg, Esq., Federal, State and Human Rights set forth in eight (8) separate claims as set forth herein:

(1) violation of Plaintiff's U.S. Constitution First Amendment right applied to the States under the Fourteenth Amendment, including the right to free speech, the free practice of religion or levity and right to freely assemble;

(2) Violation of the Plaintiff's First Amendment Equal Protection Clause as applied to the States under the 14ᵗʰ Amendment;

(3) violations of the American Disabilities Act ("ADA"), 42 U.S. Code § 12101 et al.;

(4) Violation of Separation of Powers Doctrine from the Florida Constitution;

(5) Violation of Non-Delegation Doctrine;

(6) Claim against the Defendant The Florida Bar for violation of the Sherman Act;

(7) Claim against Defendant The Florida Supreme Court for Violation of the Commerce Clause; and

(8) Violations of Federal Civil RICO—Conduct of a RICO Enterprise, 18 U.S.C. § 1962(c) by Rico Defendants.

20.     This Federal District Court has subject matter jurisdiction pursuant to Sections 1 and 2 of the Sherman Act, 28 U.S.C. §§ 1331, 1336, and 1337, 15 U.S.C. §§ 15(a) and 26, 28 U.S. Code § 1332, and 18 U.S.C. § 1962(c).

21.     This Federal District Court has personal jurisdiction over Defendants The Florida Bar, The Florida Supreme Court, Joshua E. Doyle and Linda I. Gonzalez (the "FL Defendants") because Plaintiffs' claims present federal questions of law. Furthermore, each FL Defendant resides or is organized within the borders and confines of the state of Florida.

22.     Venue is proper in this Southern District of Florida because Plaintiff resides in this District, Defendant TFB has an established office location in the District, namely Sunrise, Florida, and all Florida Defendants are residents of Florida and or their principal place of business in maintained herein. See 28 U.S.C. §§ 1391(b)(1), (c).

**23.**     Venue is also proper in this Southern District Court because a substantial part of the events or omissions giving rise to the claims stated herein by both the FL Defendants occurred, and continue to occur in this District because it is where Plaintiff currently resides and where Defendants continue to attempt to oppress him. 28 U.S.C. § 1391(b)(2).

COUNT I: THE FLORIDA BAR (TFB) AND THE FLORIDA SUPREME COURT (FSC) HAVE VIOLATED THE PLAINTIFF'S

<u>FIRST AMENDMENT RIGHTS TO FREEDOM OF ASSOCIATION AND FREEDOM OF SPEECH AS APPLIED TO THE STATE UNDER THE FOURTEENTH AMENDMENT</u>

24.     Plaintiff, re-alleges 1-23

25.     State bar associations are of two types: (1) mandatory and (2) voluntary. <u>McDonald v. Longley</u>, 4 F.4th 229 (5th Cir. 2021), <u>cert. denied sub nom.</u> <u>McDonald v. Firth</u>, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022), and <u>cert. denied sub nom.</u> <u>Firth v. McDonald</u>, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022)

26.     Mandatory state bar associations, also known as integrated bars, require that attorneys join and pay compulsory dues as a condition of practicing law in a state; voluntary bars do not. <u>McDonald v. Longley</u>, 4 F.4th 229 (5th Cir. 2021), <u>cert. denied sub nom.</u> <u>McDonald v. Firth</u>, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022), and <u>cert. denied sub nom.</u> <u>Firth v. McDonald</u>, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022)

27.     Defendant The State Bar of Florida is a mandatory bar, requiring that attorneys join and pay compulsory dues as a condition of practicing law in the state.

28.     Defendant The Florida Bar engages in expressive association when they have forced inclusion of persons into TFB, whom the PLAINTIFF cannot support for his religious beliefs who affects TFB's ability to advocate public and private viewpoints when TFB reprimands attorneys publicly and privately, for expressing their opinions about certain life groups who Defendant TFB associates with and holds membership within their association.

29.     Defendant The Florida Bar uses annual funds by giving monies to its various committees within TFB, who partake in extensive lobbying efforts that go against the PLAINTIFF's beliefs.

30.     Defenant TFB has chosen to add violations against the PLAINTIFF, after he expressed his opinion on his adversarial beliefs about TFB. This occurred after PLAINTIFF attempted to petition voluminous times to permanently retire.

31.     Defendant TFB assists The Florida Bar Foundation and their exclusive member Insurance Company that does not support the beliefs of the PLAINTIFF. TFB gives deferential treatment to members to assist with these entities connected to TFB.

32.     Defendant TFB mandates specific medical treatments and evaluations for members of TFB, based on the PLAINTIFF's, disability that goes against the PLAINTIFF's religious beliefs when they mandate mental health evaluations and treatments given by various healthcare professionals, not affiliated with the PLAINTIFF's religious organizations.

33.     Defendant TFB mandates specific medical treatments, utilizing treatment plans and therapy techniques, that go against the PLAINTIFF's beliefs in choosing who can administer the evaluations, the type of evaluation, and the types of treatments for the PLAINTIFF's medical condition, as a condition to practice Florida law.

34.     For groups that engage in expressive association, freedom of association plainly presupposes freedom not to associate. U.S. Const. Amend. 1.McDonald v. Longley, 4 F.4th 229 (5th Cir. 2021), cert. denied sub nom. McDonald v. Firth, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022), and cert. denied sub nom. Firth v. McDonald, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022)

35.     Under the First Amendment's freedom of association, individuals have an right to eschew association for expressive purposes. U.S. Const. Amend. 1. <u>McDonald v. Longley</u>, 4 F.4th 229 (5th Cir. 2021), <u>cert. denied sub nom.</u> <u>McDonald v. Firth</u>, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022), and <u>cert. denied sub nom.</u> <u>Firth v. McDonald</u>, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022)

36.     Under the First Amendment's freedom of association, individuals' right to eschew association for expressive purposes is part and parcel of the cardinal constitutional command that the government may not compel individuals to mouth support for views they find objectionable. U.S. Const. Amend. 1. <u>McDonald v. Longley</u>, 4 F.4th 229 (5th Cir. 2021), <u>cert. denied sub nom.</u> <u>McDonald v. Firth</u>, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022), and <u>cert. denied sub nom.</u> <u>Firth v. McDonald</u>, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022)

37.     Compelling a lawyer to join a bar association engaged in non-germane activities burdens his or her First Amendment right to freedom of association. U.S. Const. Amend. 1.<u>McDonald v. Longley</u>, 4 F.4th 229 (5th Cir. 2021), <u>cert. denied sub nom.</u> <u>McDonald v.</u>

Firth, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022), and cert. denied

sub nom. Firth v. McDonald, 142 S. Ct. 1442, 212 L. Ed. 2d 538

(2022)

38.     Defendant TFB gives no option to refund membership dues

when a member cannot support their political activities.

39.     Defendant TFB publishes statements in their news articles

that are not germane to their role, and gives the appearance of

funding non-germane speech, with no ability to refund dues to

members who do not support Defendant TFB's statements which

has been found to violate state bar members freedom of speech.

Crowe v. Oregon State Bar, 989 F.3d 714, 723 (9th Cir.), cert. denied

sub nom. Gruber v. Oregon State Bar, 142 S. Ct. 78, 211 L. Ed. 2d

15 (2021), and cert. denied, 142 S. Ct. 79, 211 L. Ed. 2d 15 (2021)

40.     Defendant The Florida Bar continues to publicly state their

rules are made to protect the public; however, the effects of their

rules only protect themselves and their powers as an association.

Voluminous members of the public continue to evidence harm

specifically because of Defendant TFB's rules and policies.

41.     Defendant TFB's actions of mandating Florida Members Attorneys to remain associated to with Defendants' organizations when Plaintiff, and those similarly situated, have publicly expressed positions contrary to the Plaintiff and his belief of what is in the best interest of the public interest, forcing membership dues, and denying members ability to disassociate from their organization is the most restrictive application for implementing the powers vested to them from Defendant Florida Supreme Court.

42.     Although states have interests in allocating the expenses of regulating the legal profession and improving the quality of legal services to licensed attorneys, they do not have a compelling interest in having all licensed attorneys engage as a group in other, non-germane activities, and thus, compelled membership in a bar association that engages in non-germane activities fails exacting scrutiny under the First Amendment right to freedom of association. U.S. Const. Amend. 1.McDonald v. Longley, 4 F.4th 229 (5th Cir. 2021), cert. denied sub nom. McDonald v. Firth, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022), and cert. denied sub nom. Firth v. McDonald, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022)

43.     The purposes justifying compelled association in a state bar association are regulating the legal profession and improving the quality of legal services; for the bar's activities to be germane, as required to survive exacting scrutiny under the First Amendment right to freedom of association, they must be necessarily or reasonably incurred for those purposes. U.S. Const. Amend. 1 McDonald v. Longley, 4 F.4th 229 (5th Cir. 2021), cert. denied sub nom. McDonald v. Firth, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022), and cert. denied sub nom. Firth v. McDonald, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022)

44.     TFB advocates and take actions by use of their rule-making powers to substantively change laws created by Florida's legislature that have effects contrary to legislative intent. Texas State Bar Association's legislative program was partly non-germane to purposes of regulating legal profession and improving quality of legal services, and thus, compelling attorneys to join association engaging in legislative program violated their First Amendment right to freedom of association.

45.     Most of Defendant TFB program's lobbying was non-germane, such as advocating changes to state's substantive law, because those lobbying efforts were wholly disconnected from Texas court system or law governing lawyers' activities and had imprimatur of entire bar, rather than only bar's voluntary subject-matter sections that paid direct lobbying expenses but were funded by mandatory bar dues. U.S. Const. Amend. 1.McDonald v. Longley, 4 F.4th 229 (5th Cir. 2021), cert. denied sub nom. McDonald v. Firth, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022), and cert. denied sub nom. Firth v. McDonald, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022)

46.     Lobbying by a state bar association that requires attorneys to join is germane to regulating the legal profession and improving the quality of legal services, as required to survive exacting scrutiny under the First Amendment right to freedom of association, where officials and members of the bar are acting essentially as professional advisers to those ultimately charged with the regulation of the legal profession. U.S. Const. Amend. 1.McDonald v. Longley, 4 F.4th 229 (5th Cir. 2021), cert. denied sub nom. McDonald v. Firth, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022), and

cert. denied sub nom. Firth v. McDonald, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022)

47.    The germaneness test for a state bar association to survive exacting scrutiny under the First Amendment right to freedom of association does not require that there be unanimity on the bar's position on what best regulates the legal profession; that is typically for the bar to decide. U.S. Const. Amend. 1.McDonald v. Longley, 4 F.4th 229 (5th Cir. 2021), cert. denied sub nom. McDonald v. Firth, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022), and cert. denied sub nom. Firth v. McDonald, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022)denied sub nom. Firth v. McDonald, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022)

48.    Defendant TFB continues to engage in activities and fund activities with bar membership dues that fall outside of regulating the legal profession and/or improving the quality of legal services.

49.    Under the First Amendment freedom of speech, a state bar association may constitutionally fund activities germane to regulating the legal profession or improving the quality of legal services out of the mandatory dues of all members; however, the bar

may not in such manner fund activities of an ideological nature which fall outside of those areas of activity. U.S. Const. Amend. 1.<u>McDonald v. Longley</u>, 4 F.4th 229 (5th Cir. 2021), <u>cert. denied sub nom.</u> <u>McDonald v. Firth</u>, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022), and <u>cert. denied sub nom.</u> <u>Firth v. McDonald</u>, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022)

50.     Defendant TFB continues to hold events, using membership dues to fund alcoholic beverages, that directly goes against the PLAINTIFF's religious beliefs.

51.     Defendant TFB continues to profit of their disciplinary process by targeting specific attorneys to prosecutive, while allowing other attorneys to engage in unethical practices, against the PLAINTIFF's religious beliefs.

52.     Defendant TFB uses mandatory dues to fund various activities of TFB that directly goes against the PLAINTIFF's beliefs.

53.     The PLAINTIFF has no ability to review Defendants TFB's annual budgets to determine and analyze his mandatory dues are being used in furtherance of Defendant TFB's annual agenda nor

any means of obtaining refunds for any expenses that directly interfere with his beliefs.

54.     The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury required for granting a preliminary injunction. U.S. Const. Amend. 1.McDonald v. Longley, 4 F.4th 229 (5th Cir. 2021), cert. denied sub nom. McDonald v. Firth, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022), and cert. denied sub nom. Firth v. McDonald, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022)

55.     Preliminary injunctions protecting First Amendment freedoms are always in the public interest. U.S. Const. Amend. 1. McDonald v. Longley, 4 F.4th 229 (5th Cir. 2021), cert. denied sub nom. McDonald v. Firth, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022), and cert. denied sub nom. Firth v. McDonald, 142 S. Ct. 1442, 212 L. Ed. 2d 538 (2022)

WHEREFORE, the PLAINTIFF requests, declaratory and injunction relief, as DEFENDANT(S), The Florida Bar and The Florida Supreme Court have violated his First Amendment Right to Freedom of Association, Freedom of Speech, as afforded to him through the

Fourteenth Amendment and all other remedies necessary and just under Federal Statutes.

COUNT II: LINDA GONZALEZ,ESQ. IN HER INDIVIDUAL CAPACITY, JOSHUA DOYLE, ESQ., IN HIS OFFICIAL CAPACITY, AND THE FLORIDA BAR HAVE ENGAGED IN SELECTIVE PROSECUTION, RESULTING IN VIOLATION OF THE EQUAL PROTECTIONS CLAUSE

56.    Plaintiff realleges 1-24

57.    DEFENDANTS, Linda Gonzalez, Esq., Joshua Doyle, Esq., and The Florida Bar (TFB) have chosen to selectively prosecute the PLAINTIFF, whereas attorney members of TFB, in similar circumstances have been allowed to engage in the same alleged violations that are against the PLAINTIFF, with no furtherance of prosecutorial steps against them by DEFENDANT(S).

58.    DEFENDANTS, Joshua Doyle, Esq., in his official capacity has chosen to selectively deny the PLAINTIFF's petition for permanent retirement, whereas he has granted all petitions for retirement, for members of TFB, in similar circumstances.

59.    The PLAINTIFF, is a protected class under the American's with Disability Act (ADA), as well as, a member of both the Rastafarian movement and a Hebrew.

60.     DEFENDANT(S), have made it publicly known that they may chose who they would like to prosecute against and who they do not wish to prosecute against, contained within their rules and in pleadings in publicly filed cases.

61.     DEFENDANT, Linda Gonzalez, Esq., has chosen to add violations against the PLAINTIFF, after he expressed his opinion on his adversarial beliefs about TFB. This occurred after PLAINTIFF attempted to petition voluminous times to permanently retire.

62.     DEFENDANT(S), have chosen to severely prosecute the PLAINTIFF, beyond the normal discipline and settlements with the DEFENDANT(S) in similar circumstance the DEFENDANT(S) have chosen to prosecute.

63.     DEFENDANT(S) have exceeded the powers delegated to them by The Florida Supreme Court and their prosecutorial discretionary actions have created harm to the PLAINTIFF and the public.

64.     The DEFENDANT(S) chose to hire an Executive Director, with extensive involvement with a lobbying agenda, whose mother

serves as a non-lawyer on various committees within Defenant TFB, who has an extensive background in pursuing targeted political agenda. The ED does not serve a limited term and can hold this position of power, indefinitely. The ED is given various powers and decision making over Defendant TFB member attorneys.

65.    The effects of the rules on attorney discipline, created by the DEFENDANT(S), have the effect of discrimination against various attorneys who are not in line with the DEFENDANT's agenda, political goals, and do not fit the standard of those the DEFENDANT's have chosen not to prosecute, who include members in a different socioeconomic class, religion, and/or sexual orientation.

66.    Selective-prosecution claim is not a defense on merits to criminal charge itself, but an independent assertion that prosecutor has brought charge for reasons forbidden by equal protection clause of the Constitution. U.S.C.A. Const.Amend. 14.<u>United States v. Armstrong</u>, 517 U.S. 456, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996)

67.    Equal protection clause prohibits decision to prosecute based on an unjustifiable standard such as race, religion, or other

arbitrary classification. U.S.C.A. Const.Amend. 14.<u>United States v.</u>

<u>Armstrong</u>, 517 U.S. 456, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996)


WHEREFORE, the PLAINTIFF requests declaratory and injunctive

relief is granted for the DEFENDANT(S), Linda Gonzalez, Esq., in her

personal capacity, Joshua Doyle, Esq., in his official capacity, and TFB

violated the Equal Protections Clause and all other remedies necessary

and just under Federal Statute

<u>CLAIM III: THE FLORIDA BAR HAS VIOLATED 28 USC SEC. 1983 OF
THE U.S. CONSTITUTION'S 14TH AMENDMENT RIGHT TO EQUAL
PROTECTION</u>

68.     Plaintiff realleges 1-24

69.     DEFENDANTS, Linda Gonzalez, Esq., Joshua Doyle, Esq.,

and The Florida Bar have chosen to selectively prosecute the

PLAINTIFF, whereas attorney members of Defendant TFB, in

similar circumstances have been allowed to engage in the same

alleged violations that are against the PLAINTIFF, with no

furtherance of prosecutorial steps against them by

DEFENDANT(S).

70.     The PLAINTIFF is a protected class under the American's with Disability Act (ADA), as well as, a member of both the Rastafarian movement and a Hebrew.

71.     DEFENDANTS, Joshua Doyle, Esq., in his official capacity has chosen to selectively deny the PLAINTIFF's petition for permanent retirement, whereas he has granted all petitions for retirement, for members of Defendant TFB, in similar circumstances.

72.     DEFENDANT, Linda Gonzalez, Esq., in her official capacity, has complete control to move a complaint against the PLAINTIFF, to the grievance committee.

73.     DEFENDANT, Linda Gonzalez, Esq., in her official capacity, refused to settle with the PLAINTIFF and cease her unjustified persecution of Plaintiff, unless he agreed to engage in medical treatment which offended his fundamental levity and moral tenants against his personal spiritual beliefs.

74.     DEFENDANT, Linda Gonzalez, Esq., in her official capacity, holds complete control over the allegations she writes within a formal complaint.

75.     DEFENDANT, Joshua Doyle, Esq., hold complete power to grant or deny the PLAINTIFF's Petition for Permanent Retirement from Defendant TFB and has chosen to continue to deny all efforts of the PLAINTIFF to retire from his association with TFB for reasons stated in this complaint.

76.     DEFENDANTS have made it publicly known, in fact arrogantly boasting, that they may choose who they would like to prosecute against and who they do not wish to prosecute against, contained within their rules and in pleadings in publicly filed cases.

77.     DEFENDANT(S) have chosen to severely prosecute the PLAINTIFF, beyond the normal discipline and settlements with the DEFENDANT(S) in similar circumstance the DEFENDANT(S) have chosen to prosecute.

78.     The DEFENDANT(S) has chosen to hire an Executive Director, with extensive involvement with a lobbying agenda, whose mother serves as a non-lawyer on various committees within Defendant TFB, who has an extensive background in pursuing targeted political agenda. Defendant TFB does not serve a limited term and can hold this position of power, indefinitely. The ED is

given various powers and decision making over TFB member attorneys by virtue of his directorship with Defendant TFB.

79.     DEFENDANT, Linda Gonzalez, Esq., has chosen to add violations against the PLAINTIFF, when he attempted to exercise his constitutional rights and when he expressed his opinion on his adversarial beliefs about Defendant TFB. This occurred after PLAINTIFF attempted to petition voluminous times to permanently retire.

80.     The effects of the rules on attorney discipline, created by the DEFENDANT(S), have the effect of discrimination against various attorneys who are not in line with the DEFENDANT's agenda, lobbying and political goals, and do not fit the standard of those the DEFENDANT's have chosen not to prosecute, who include members in a different socioeconomic class, religion, and/or sexual orientation.

81.     The DEFENDANT(S), refusal to allow the PLAINTIFF's ability to disassociate with their association, has led to unnecessary costs for litigation in pursuit of discipline against the PLAINTIFF and additional violations detrimental to the PLAINTIFF's

reputation, when Defendants merely could avoid the unnecessary growing costs and fees incurred when Defendant TFB, Gonzoles and Doyle should have granted Plaintiff's Petition to Permanently Retire from Defendant TFB. And on the six (6) occasions thereafter.

82.     DEFENDANT(S), have caused the PLAINTIFF, harm by continuing to pursue discipline against him, despite his efforts to permanently retire. Thus, exacerbating his medical condition.

83.     The DEFENDANT(S) have their own financial accounts separate from the treasury account of The Florida Supreme Court.

84.     DEFENDANT(S) have exceeded the powers delegated to them by The Florida Supreme Court and their prosecutorial discretionary actions have created harm to the PLAINTIFF and the public.

85.     The PLAINTIFF is not limited from seeking recovery for injunctive relief if monetary damages are not awarded on this claim. U.S. Const. Amend. 14.Apatow v. Town of Stratford, No. 3:21-CV-01692 (JCH), 2023 WL 122038 (D. Conn. Jan. 6, 2023)

86.     By its terms, § 1983 creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere

42 U.S.C.A. § 1983.Apatow v. Town of Stratford, No. 3:21-CV-01692

(JCH), 2023 WL 122038 (D. Conn. Jan. 6, 2023)Apatow v. Town of

Stratford, No. 3:21-CV-01692 (JCH), 2023 WL 122038 (D. Conn.

Jan. 6, 2023)

87.     The equal protection clause does not apply to claims of

disability-related discrimination or retaliation in employment. U.S.

Const. Amend. 14.Apatow v. Town of Stratford, No. 3:21-CV-01692

(JCH), 2023 WL 122038 (D. Conn. Jan. 6, 2023)

88.     The Equal Protection Clause is essentially a direction that all

persons similarly situated should be treated alike. U.S. Const.

Amend. 14.Apatow v. Town of Stratford, No. 3:21-CV-01692 (JCH),

2023 WL 122038 (D. Conn. Jan. 6, 2023)

89.     A plaintiff may bring a "class of one" equal protection claim

where the plaintiff alleges that he has been intentionally treated

differently from others similarly situated and that there is no

rational basis for the difference in treatment. U.S. Const. Amend.

14.Apatow v. Town of Stratford, No. 3:21-CV-01692 (JCH), 2023

WL 122038 (D. Conn. Jan. 6, 2023)

90.     To prevail on a "selective enforcement" claim under the equal protection clause, a plaintiff must show both (1) that he was treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. U.S. Const. Amend. 14.Apatow v. Town of Stratford, No. 3:21-CV-01692 (JCH), 2023 WL 122038 (D. Conn. Jan. 6, 2023)

91.     Selective enforcement claims under the equal protection clause require a reasonably close resemblance between a plaintiff's and a comparator's circumstances. U.S. Const. Amend. 14.Apatow v. Town of Stratford, No. 3:21-CV-01692 (JCH), 2023 WL 122038 (D. Conn. Jan. 6, 2023)

92.     Under the standard for selective enforcement claims under the equal protection clause, a plaintiff must specify at least one instance in which he was treated differently from another similarly situated. U.S. Const. Amend. 14.Apatow v. Town of Stratford, No. 3:21-CV-01692 (JCH), 2023 WL 122038 (D. Conn. Jan. 6, 2023)

WHEREFORE, DEFENDANT(S), Linda Gonzalez, Esq., in her personal capacity, Joshua Doyle, Esq., in his official capacity, and TFB have violated 28 USC 1983 and the Equal Protections clause, the PLAINTIFF requests monetary damage and all other damages afforded under the remedy for 1983 against the said Defendant(s) in their official and individual capacity and all other remedies necessary and just under Federal Statute.

## COUNT IV: DEFENDANT, JOSHUA DOYLE, ESQ., IN HIS OFFICIAL CAPACITY VIOLATED THE PLAINTIFF'S RIGHTS UNDER THE AMERICANS WITH DISABILITY ACT

93.     Plaintiff re-alleges 1-24.

94.     Title II of the Americans with Disabilities Act applies to and restrains states and state agencies from discrimination against citizens on the basis of disabilities, real or falsely imputed.

95.     Defendant JOSHUA DOYLE, ESQ. in his official capacity, engaged in the actions deemed to violate Title II of the Americans with Disabilities Act.

96.     The Plaintiff should be afforded protections under the ADA. Attorney's has a "disability" under Americans with Disabilities Act (ADA). Americans with Disabilities Act of 1990, § 201(2), 42 U.S.C.A. § 12131(2). The Fla. Bar v. Clement, 662 So. 2d 690 (Fla.

1995), as amended (Nov. 28, 1995). The ADA applies to the City because it is a "public entity" as defined by title II. 42 U.S.C. § 12131(1).

97.     Furthermore, the Plaintiff should not have to endure discriminatory differences in treatment compared to other practicing attorneys in similar circumstances. Defendant(s) have always had full knowledge of the Plaintiff's disability for the alleged facts in this complaint.

WHEREFORE, the Plaintiff seeks injunctive relief for the violation of Title II of Americans with Disabilities Act, and JOSHUA DOYLE, ESQ. in his official capacity should be held liable for injunctive relief and all other remedies necessary and just as afforded.

CLAIM V: THE FLORIDA SUPREME COURT AND THE FLORIDA BAR HAVE VIOLATED FLORIDA CONSTITUTION'S SEPARATION OF POWERS DOCTRINE

98.     Plaintiff re-alleges 1-24

99.     Florida has been given certain powers to protect the public. However, The Florida Supreme Court and The Florida Bar have used the powers of regulating attorneys to further their own agenda, rather than protect the public.

100.    Their rule-making power, as it pertains to attorney-discipline has allowed Defenant TFB to selectively choose an attorney to prosecute based on discrimination.

101.    Their rule-making powers have allowed Defendants FSC and TFB to mandate an attorney remains a member of an association they do not support for personal and religious beliefs.

102.    Defendants FSC and TFB, have incorrectly stated they hold exclusive rule-making powers. However, pursuant to Florida state's Constitution, the legislature can contest rules that are contrary to their statutory intent.

103.    Defendant TFB continues to engage in powers that have not been delegated to them by the FSC, while the FSC has granted TFB's amendments to rules that exceed their vested powers.

104.    The FSC has continued to allow TFB to violate PLAINTIFF's constitutional rights.

105.    FSC lacks required oversight of the attorney disciplinary process, exclusively made up of the accused attorney's market participants.

106.     Party litigants with sufficient concrete interest at stake may have standing to raise constitutional questions of separation of powers with respect to an agency designated to adjudicate their rights. <u>Buckley v. Valeo</u>, 424 U.S. 1, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976)

107.     Constitution by no means contemplates total separation of each of the three essential branches of government. <u>Buckley v. Valeo</u>, 424 U.S. 1, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976)

WHEREFORE, DEFENDANT(S), The Florida Supreme Court and The Florida Bar have violated the Separation of Powers Doctrine, and the PLAINTIFF, requests declaratory and injunctive relief and all other remedies necessary and just under Federal Statute.

## <u>CLAIM VI: THE FLORIDA BAR HAS VIOLATED THE SHERMAN ACT</u>

108.     Plaintiff realleges paragraphs 1-24

109.     Defendant TFB is run by market participants and is not actually supervised by Defendant FSC in the Bar's prosecutorial decisions.

110.     Defendant TFB is not immune from the Sherman Act despite its relationship to Defendant FSC because the Sherman Act

prohibits a State from assisting another's violation of the Sherman Act.   See <u>California Retail Liquor Dealers Assoc. v. Midcal Aluminum, Inc</u>., 445 US 97, 106 (1980)("a state does not give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful..." (quoting *Parker*, 317 US at 351)."

111.    Defendant TFB lacks Eleventh Amendment immunity because the Sherman Act was enacted pursuant to the Commerce Clause and as part of the plan of the convention the States structurally waived the right to assert sovereign immunity to claims made pursuant to the Commerce Clause.   See <u>Torres v. Texas Dept. of Public Safety</u>, 142 S. Ct. 2455, 2485 (2022)(Dissent commenting that the majority apparently has limited *Seminole* and revived *Parden*'s theory of plan-of-the-Convention waiver).

112.    PLAINTIFF has, is and will suffer damages by being unable to practice Florida la as a member in good standing of this jurisdiction because of Defendants TFB's violation of the Sherman Act.

**Wherefore** PLAINTIFF sues Defendant TFB pursuant to the Sherman Act and seeks treble damages and such other relief as this Court deems proper.

## CLAIM VII: THE FLORIDA BAR AND THE FLORIDA SUPREME COURT HAVE VIOLATED THE FEDERAL CIVIL RICO— CONDUCT OF A RICO ENTERPRISE. 18 U.S.C. § 1962(C)

113.    Plaintiff realleges the Introduction and Summary section, Brief History of The Florida Bar section, Background and Facts Section and paragraphs 1-112 as set forth fully herein.

114.    At All relevant times RICO Defendants are defined as Defendant The Florida Bar and Defendant Florida Supreme Court (collectively, RICO Defendants).

115.    At all relevant times, RICO Defendants are each "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

116.    RICO Defendants each violated 18 U.S.C. § 1962(c) by the acts described in the paragraphs 1-132 set forth herein.

117.    RICO Defendants devised or intended to devise a scheme to defraud Plaintiff of money, property, and his economic livelihood by depriving Plaintiff, along with many of The Florida Bar's member

attorneys similarly situated, of their Good Standing Status and
Active Membership in Defendant TFB of false or fraudulent
pretenses and representations.

118.    Namely Defendants were protecting member attorney's best
interest not crucifying them via malicious prosecutions and
publishing self-serving narratives for media consumption while
controlling dissemination of said events tainted by RICO
Defendants' biased, self-serving and uncorroborated narratives.

119.    For the purposes of executing their scheme, RICO Defendants
delivered or caused delivery of various documents and things by the
U.S. mails or by private or commercial interstate carriers, or
received such therefrom. RICO Defendants used the world wide
web to forward their enterprises. For the purposes of executing
their scheme, RICO Defendants transmitted or caused to be
transmitted by means of wire communications in interstate or
foreign commerce various writings, signs, and signals and other
memorandum.

120.    The RICO Defendants used wire and mail communications in
furtherance of their scheme to defraud Plaintiff, and others

similarly situated FL Bar members, to blindly believe that Defendants TFB and FSC served the best interests of the administration of justice in Florida, in violation of 18 U.S.C. §§ 1341 and 1343.

121.    RICO Defendants used the wires and mails in interstate commerce with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of an unlawful and constitutionally violative activities, as well as engage in unlawful enterprises and behaviors.

122.    RICO Defendants racketeering activities were multiple, continuous, and ongoing from about January 19, 2013, and remain ongoing today, with additional actors being added or subtracted on an evolving basis.

123.    RICO Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to advance their scheme to prohibit Plaintiff, and others similarly situated, from competing with RICO Defendants in the state of Florida as well as in the state of New York, to acquire and retain clients seeking low cost, effective and impeccable legal representation.

124.    RICO Defendants knowingly and intentionally prepared documents, including but not limited to, consent judgments, grievance committee filings, referrals to the Florida Lawyers Assistance, Inc. a wholly owned subsidary of Defendant The Florida Bar, correspondence of conspiring with Defendant NYGC. Plaintiff continues to remain an attorney in good standing admitted practicing in New York.

125.    RICO Defendants correspondence to the Broward County Clerk of Courts and Judicial Assistants, communications with the Broward County States attorney office, other letters, notices, and other documents, and then knowingly and with the intent to harm Plaintiff, caused those documents or convey information about the Plaintiff which were maliciously sent by the RICO Defendants to The Broward County Court, The Florida Supreme Court, the 17A Grievance Committee of the Florida Bar, Florida Lawyers Assistance, Inc., the New York Grievance Committee for the 10th District Bar or other unidentified or so far unknown entities that would further RICO Defendants' scheme to harm and prevent fair

economic competition for licensed legal services in the state of Florida and elsewhere, via the imposition of reciprocal discipline.

126.    Each RICO Defendant has engaged in multiple predicate acts, as described in this Complaint. The conduct of each RICO Defendant described herein constitutes an intentional and malicious pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

127.    RICO Defendants' violations of federal law as set forth herein, each of which directly and proximately injured Plaintiff, and those similarly situated, constitutes a continuous course of conduct, which was intended to extinguish Plaintiff's Barry R, Gainsburg's professional career as a licensed Florida attorney, harm Plaintiff and deny him of money and prosperity through false statements, coercive administrative court filings along with other initiated court coordinated actions, and for other improper and unlawful means engaged in by the RICO Defendants.

Therefore, said violations and actions taken by the RICO Defendants were a part of racketeering activity as defined by 18 U.S.C. §§ 1961(1) and (5).

128.     Plaintiff, and those similarly situated, with attorney bar licensure in more than one state, New York in Plaintiff's case, were injured in their current and future potential earnings, professional careers and reputations, as well as prosperity and happiness by reason of RICO Defendants' violation of 18 U.S.C. § 1962(c).

129.     RICO Defendants' injuries to Plaintiffs were a direct, intentional, malicious, proximate, and reasonably foreseeable result of their violation of 18 U.S.C. § 1962.

130.     Plaintiff, and all those similarly situated, are the ultimate victims of RICO Defendants' unlawful evil enterprise plots and schemes against solo and small law firms who offer affordable quality legal services to Florida and other state residents.

131.     Plaintiff, and all those similarly situated, have been and will continue to be injured in their money, income, property, prosperity, and happiness by RICO Defendants in an amount to be determined at trial.

132.     Pursuant to 18 U.S.C. § 1962(c), Plaintiff is entitled to recover treble damages plus costs and attorneys' fees from RICO

Defendants as well as any other relief authorized by statute and deemed just and proper by this Honorable Tribunal.

WHEREFORE, PLAINTIFF requests this Court to find TFB and FSC have violated RICO, and order treble damages, plus costs and attorney's fees and all other remedies necessary and just under Federal Statute.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

## CERTIFICATE OF SERVICE.

I certify that on October 2, 2023, that a copy of the foregoing was filed with the Federal District Court of Florida, Southern District by the pro se Plaintiff and said was filed with the Court by Personal Filing with the Clerk of the Court.

Respectfully Submitted,

s//

Barry R, Gainsburg, pro se

10601 Royal PALM Blvd

CorAL Springs, FL

33065

79