**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-cv-61877-ALTMAN/Hunt**

**BARRY R. GAINSBURG**,

     *Plaintiff*,

*v.*

**THE FLORIDA BAR**, *et al.*,

     *Defendants*.

_____/

**OMNIBUS ORDER**

Our Plaintiff, Barry R. Gainsburg, was once a licensed Florida lawyer. But, when Gainsburg was arrested on criminal charges in 2020, he tried to avoid having the Florida Bar throw him out. So, he began asking the Bar to allow him to "retire" from the practice of law—a request the Bar promptly denied. Undeterred, Gainsburg has now moved the Bar to let him retire *seven different times*—and the Bar has rejected each of these requests. Gainsburg appealed two of those rejections (the first and the seventh), to the Supreme Court of Florida, which affirmed the Bar's decision both times.

After the Bar denied his most-recent petition, Gainsburg sued the Florida Bar, the Supreme Court of Florida, Joshua E. Doyle (the Florida Bar's Executive Director), and Linda I. Gonzalez (an attorney for the Florida Bar), advancing a long litany of federal statutory and constitutional claims. We have before us now two motions to dismiss: one by the Florida Supreme Court [ECF No. 11] and a second from the other three Defendants (collectively, the "Florida Bar Defendants") [ECF No. 12]. After careful review, we **GRANT** both motions.

**THE FACTS**

Barry Gainsburg was once a practicing attorney in the State of Florida. *See* Compl. [ECF No. 1] at 42 ("Plaintiff . . . is a former Florida licensed attorney who now maintains inactive status[.]"). On

April 6, 2020, while on probation from the Florida Bar for a prior disciplinary infraction, Gainsburg was arrested for unlawfully brandishing a dangerous weapon, in violation of FLA. STAT. § 790.10. *Id.* at 33. He would later be convicted of one misdemeanor count for that offense and, on October 28, 2022, was sentenced to five days in jail—to be followed by six months of probation. *Ibid.*

On July 15, 2020, Gainsburg reported his arrest to the Florida Bar and "explained the circumstances surrounding his arrest directly to" Linda I. Gonzalez, an attorney who works for the Florida Bar. *Id.* at 34. The Florida Bar deferred its disciplinary investigation into Gainsburg's professional fitness "until the pending court matter was resolved." *Ibid.* And, on November 6, 2022— one week after Gainsburg was sentenced in his criminal case—the Florida Bar "resumed the suspended disciplinary investigation" of Gainsburg. *Id.* at 36. On March 28, 2023, before that investigation had been completed, Gainsburg "filed his first Petition for Permanent Retirement" from the Florida Bar. *See id.* at 37. The Florida Bar denied that petition on April 6, 2023, *ibid.*, and, on July 14, 2023, the Supreme Court of Florida declined to disturb the Bar's decision, *see Gainsburg v. Fla. Bar*, 2023 WL 4539118 (Fla. July 14, 2023) (*Gainsburg I*).[1] Gainsburg has since filed six "additional renewed Petitions for Permanent Retirement . . . with [his] last renewal attempt [filed on] September 11, 2023." Compl. at 38. The Florida Bar denied each of those petitions as well. *Id.* at 37–38.

On October 2, 2023—soon after the Florida Bar informed Gainsburg "that his disciplinary investigation [had] been moved to the Grievance Committee" for a probable-cause determination, *id.* at 40—Gainsburg filed this lawsuit against the Florida Bar, the Supreme Court of Florida, Linda Gonzalez, and Joshua E. Doyle (the Florida Bar's Executive Director). According to Gainsburg, these

---

[1] "A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment." *Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) (cleaned up). And public court records "are among the permissible facts that a district court may consider." *Ibid.* (first citing *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003); and then citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999)).

Defendants "conspire[d] to hold [him] to attorney standards by refusing to grant his petition for permanent retirement." *Id.* at 41. Gainsburg also filed a second Petition for Review in the Supreme Court of Florida—this time challenging the Florida Bar's denial of his September 11, 2023, retirement request. *See* Second Petition for Review of Denial of Petition for Permanent Retirement ("Second Petition for Review") [ECF No. 29] at 37–49. The Florida Supreme Court denied that petition on January 4, 2024, while this case was pending. *See Gainsburg v. Fla. Bar*, 2024 WL 48816 (Fla. Jan. 4, 2024) (*Gainsburg II*).

Gainsburg asserts violations of the First Amendment (Count I), the Fourteenth Amendment (Counts II & III), the Americans with Disabilities Act ("ADA") (Count IV), the separation-of-powers doctrine (Count V), the Sherman Act (Count VI), and the Racketeer Influenced and Corrupt Organizations Act (the "RICO Act") (Count VII). *See id.* at 47–79. On October 31, 2023, the Supreme Court of Florida and the Florida Bar Defendants filed two separate motions to dismiss—both asking us to dismiss this case for lack of subject-matter jurisdiction under FED. R. CIV. P. 12(b)(1) and for failure to state a claim under FED. R. CIV. P. 12(b)(6). *See* Supreme Court of Florida Motion to Dismiss ("Sup. Ct. Fla. MTD") [ECF No. 11] at 1; Florida Bar Defendants' Motion to Dismiss ("Fla. Bar Defs.' MTD") [ECF No. 12] at 1. We consider those two motions here.

## THE LAW

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The "party bringing the claim," therefore, generally must first "establish[ ] federal subject matter jurisdiction" before a federal court can review a claim on its merits. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 20050 (citing *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir.2002) (per curiam)); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause." (cleaned up)). If a federal court "determines that it is without subject matter jurisdiction, the court is powerless to continue."

*Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

A motion challenging federal subject-matter jurisdiction under FED. R. CIV. P. 12(b)(1) may take the form of either a "facial attack" or a "factual attack." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 1990). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence*, 919 F.2d at 1529). A "factual attack" instead "challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008). In considering a factual attack on jurisdiction, "a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). And the "moving party bears the burden to show that the complaint should be dismissed." *Spring Solutions, Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1229 (S.D. Fla. 2014) (Cohn, J.) (quoting *Mendez-Arriola v. White Wilson Med. Ctr., P.A.*, 2010 WL 3385356, at *3 (M.D. Fla. Aug. 25, 2010) (Rodgers, J.)).

ANALYSIS

The Supreme Court of Florida and the Florida Bar Defendants have filed separate motions to dismiss. *See generally* Sup. Ct. Fla. MTD; Fla. Bar Defs.' MTD. The Supreme Court of Florida asks us to dismiss Gainsburg's Complaint based on "Eleventh Amendment and judicial immunity" because Gainsburg "lacks standing and has failed to present a justiciable controversy" and because the Complaint "is a shotgun pleading" that fails to "adequately plead" any claims. Sup. Ct. Fla. MTD at 2. The Florida Bar Defendants advance these same arguments plus two others—that dismissal is appropriate under the doctrines of res judicata and *Rooker-Feldman*. *See* Fla. Bar Defs.' MTD at 1–2.

Given the substantial overlap of these defenses—and Gainsburg's responses to them, *see generally* Plaintiff's Response to the Supreme Court of Florida's MTD ("Resp. to Sup. Ct. Fla. MTD") [ECF No. 28]; Plaintiff's Response to the Florida Bar Defendants' MTD ("Resp. to Fla. Bar Defs.' MTD") [ECF No. 29]—we'll bifurcate our analysis into two parts. In the first, we'll assess Gainsburg's claims against the Supreme Court of Florida and the Florida Bar (collectively, the "Institutional Defendants"). In the second, we'll evaluate his claims against Gonzalez and Doyle (the "Individual Defendants").

### I.       The Institutional Defendants

Gainsburg asserts claims against both Institutional Defendants for violations of the First Amendment (Count I), the "separation of powers doctrine" (Count V), and the RICO Act (Count

VII). He's also sued the Florida Bar under the Equal Protection Clause of the Fourteenth Amendment (Count III) and the Sherman Act (Count VI). The Institutional Defendants contend that they're entitled to immunity under the Eleventh Amendment to the U.S. Constitution. *See* Sup. Ct. Fla. MTD at 6 ("[T]hese state agencies should be entitled to sovereign immunity under the Eleventh Amendment."); Fla. Bar Defs.' MTD at 11 ("[T]he Florida Bar Defendants are entitled to Eleventh Amendment immunity."). We agree.

The Eleventh Amendment "bars suits by private individuals in federal court against a state unless the state has consented to be sued or has waived its immunity or Congress has abrogated the states' immunity." *Nichols v. Ala. State Bar*, 815 F.3d 726, 731 (11th Cir. 2016) (first citing *Bd. of Trs. v. Garrett*, 531 U.S. 356, 363–64 (2001); and then citing *Cross v. Ala. Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1502 (11th Cir. 1995)). To receive immunity under the Eleventh Amendment, the defendant must be "the State or one of its agencies or departments[.]" *Id.* at 276; *see also Walker v. Jefferson Cnty. Bd. of Educ.*, 771 F.3d 748, 751 (11th Cir. 2014) ("This immunity from suit is available 'only' to states and arms of the states." (quoting *N. Ins. Co. of N.Y. v. Chatham County*, 547 U.S. 189, 193 (2006))). If a claim is "barred by the Eleventh Amendment," we may not exercise jurisdiction over it. *McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) (first citing *Vt. Agency of Nat. Res. v. United States*, 529 U.S. 765, 778 (2000); and then citing *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)).

The Eleventh Circuit has long recognized that the Supreme Court of Florida and the Florida Bar are entitled to Eleventh Amendment immunity. *See Uberoi v. Sup. Ct. of Fla.*, 819 F.3d 1311, 1313–14 (11th Cir. 2016) ("Sovereign immunity bars [the Plaintiff's] claim because the Florida Supreme Court is a department of the State of Florida." (citing FLA. CONST. art. V, § 1)); *Nichols*, 815 F.3d at 732 ("[T]he Florida State bar is an arm of the state that enjoys Eleventh Amendment immunity." (cleaned up)); *see also Kaimowitz v. Fla. Bar*, 996 F.2d 1151, 1155 (11th Cir. 1993) ("The Eleventh

Amendment prohibits actions against state courts and state bars."). This is true "regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citing *Cory v. White*, 457 U.S. 85, 90–91 (1982)); *see also Cate v. Oldham*, 707 F.2d 1176, 1182 (11th Cir. 1983) ("[W]hen the state is the *named* party defendant the prospective injunctive relief/monetary damages distinction provides no basis for concluding Eleventh Amendment immunity does not apply.").

Gainsburg offers three arguments for his view that the Eleventh Amendment doesn't apply here—all unpersuasive.

*First*, Gainsburg says that, since he's "a Florida Resident," the Eleventh Amendment cannot bar his claims because "the immunity it provides is limited to the specific context of federal lawsuits brought by citizens of *other states* or foreign countries." Resp. to Sup. Ct. Fla. MTD at 8 (emphasis added). Although Gainsburg's reading of the Eleventh Amendment is understandable given the Amendment's text, *see* U.S. CONST. amnd. XI ("The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of *another* state[.]" (emphasis added)),[2] his interpretation hasn't been our law since 1890, *see Hans v. Louisiana*, 134 U.S. 1, 12 (1890) ("Any such power as that of authorizing the federal judiciary to entertain suits by individuals against the States had been expressly disclaimed[.]"). Indeed, the U.S. Supreme Court has explicitly held that, "despite the limited terms of the Eleventh Amendment, a federal court [may] not entertain a suit brought by a citizen against his own State." *Pennhurst*, 465 U.S. at 98 (citing *Hans*, 134 U.S. at 15). That's really the end of that.

*Second*, Gainsburg cites 42 U.S.C. § 12202, which says that a "State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State

---

[2] *See also* Akhil Reed Amar, *Of Sovereignty and Federalism*, 96 YALE L.J. 1425, 1476 (1987) ("If the Eleventh Amendment was meant to enshrine the general immunity of state 'sovereigns' from private suits in federal courts, it was abysmally drafted.").

court of competent jurisdiction for a violation of this chapter." Resp. to Sup. Ct. Fla. MTD at 10 (quoting 42 U.S.C. § 12202); Resp. to Fla. Bar Defs.' MTD at 9 (same). "This chapter" refers to Title 42, Chapter 126 of the United States Code—the chapter in which the Americans with Disabilities Act is codified. *See, e.g.*, *Ass'n for Disabled Ams., Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 957 (11th Cir. 2005) (noting that this section abrogates sovereign immunity "for a violation of the ADA" (cleaned up)); *see also* Americans with Disabilities Act of 1990, Pub. L. No. 101-336, § 502, 104 Stat. 327, 370 (codified at 42 U.S.C. § 12202) (waiving sovereign immunity for "violations *of this Act*" (emphasis added)). But Gainsburg doesn't allege any ADA claims against the Institutional Defendants, *see* Compl. at 68–69 (pleading an ADA claim *only* against Joshua Doyle), so the fact that Congress *might* have waived sovereign immunity for those claims is simply irrelevant here.[3]

*Third*, Gainsburg reminds us that "[t]he Eleventh Amendment does not bar claims against a state official who acted outside the scope of his statutory authority or pursuant to an unconstitutional authority." Resp. to Sup. Ct. Fla. MTD at 10 (quoting *Henry v. Fla. Bar*, 701 F. App'x 878, 880 (11th Cir. 2017)); Resp. to Fla. Bar Defs.' MTD at 9 (same). That's true. But the Institutional Defendants

---

[3] For what it's worth, several courts have found that this provision "does not validly abrogate [a state's] sovereign immunity in the context of professional licensing." *Guttman v. Khalsa*, 669 F.3d 1101, 1125 (10th Cir. 2012); *accord Schwarz v. Ga. Composite Med. Bd.*, 2020 WL 7773481, at *6 (N.D. Ga. Dec. 30, 2020); *Nichols v. Ala. State Bar*, 2015 WL 3823929, at *6 (N.D. Ala. June 19, 2015), *aff'd on other grounds*, 815 F.3d 726 (11th Cir. 2016). But Gainsburg *neither* asserts an ADA claim against the Institutional Defendants *nor* explains why we should find that Congress *has* waived sovereign immunity in this context. *See generally* Complaint. He's thus forfeited any such arguments. *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue[.]"); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."). In any event, as we'll discuss in a moment, any ADA claim Gainsburg might've brought against the Florida Bar would've failed under the doctrines of res judicata and *Rooker-Feldman*. *See post*, at 12–26.

are not "officials," so this exception is inapposite here. *See, e.g.*, *Rosenberg v. Florida*, 2015 WL 13653967, at *4 (S.D. Fla. Oct. 14, 2015) (Lenard, J.) (refusing to apply this exception where the plaintiff "d[id] not sue state officers").

Because we lack jurisdiction over Gainsburg's claims against the Institutional Defendants, *see McClendon*, 261 F.3d at 1256 ("[F]ederal courts lack jurisdiction to entertain claims that are barred by the Eleventh Amendment."), we **DISMISS** Counts I, V, and VII of the Complaint (as to the Florida Supreme Court) and Counts I, III, V, VI, and VII (as against the Florida Bar).[4]

## II.     The Individual Defendants

As we've said, Gainsburg also advances claims against two employees of the Florida Bar: Linda Gonzalez and Joshua Doyle. Specifically, Count II alleges that "Linda Gonzalez[,] in her *personal* capacity, [and] Joshua Doyle[,] in his *official* capacity . . . violated the Equal Protection Clause" by "selectively prosecut[ing]" Gainsburg. Compl. at 61 (emphases added). Count II asks for "declaratory and injunctive relief[.]" *Ibid.* In Count III, Gainsburg asserts a similar "selective enforcement" claim against Gonzalez in her personal capacity and Doyle in his official capacity—this time seeking

---

[4] Since we've "concluded . . . that [these] Defendants are immune for this lawsuit" under the Eleventh Amendment, we "need not consider" the Institutional Defendants' other arguments for dismissal. *Lawrence v. Goldberg*, 2008 WL 10665426, at *14 (S.D. Fla. Feb. 12, 2008) (Gold, J.); *see also Udick v. Florida*, 705 F. App'x 901, 905 n.4 (11th Cir. 2017) ("Having concluded that Florida is immune from [the plaintiff's] suit under the Eleventh Amendment, we need not consider the district court's alternative determinations that it lacked jurisdiction over [the plaintiff's] suit under the *Rooker-Feldman* doctrine and that [the plaintiff] failed to state a claim upon which relief could be granted."). But, because it's relevant to the question of whether these claims should be dismissed with (or without) prejudice, we'll briefly note that we *wouldn't* grant the Supreme Court of Florida's Motion on the ground that "[j]udicial immunity should apply in this situation[.]" Sup. Ct. Fla. MTD at 13. That's because judicial immunity—to the extent that doctrine applies at all, *see, e.g.*, *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984) ("We conclude that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity.")—shields *judges*, not judicial institutions (like the Supreme Court of Florida), from civil suit, *see Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) ("Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction." (cleaned up)).

"monetary damage[s]." *Id.* at 68. Lastly, in Count IV, Gainsburg sues Doyle "in his official capacity" for alleged violations of the ADA and "seeks injunctive relief[.]" *Id.* at 68–69.

Because different immunity defenses apply depending on the "identity of the real party in interest," *Lewis v. Clarke*, 581 U.S. 155, 163 (2017),[5] we'll consider Gainsburg's claims against each Individual Defendant separately.

### a.   Gainsburg's Claims against Doyle in his *Official* Capacity

The law is well-settled that "state officials sued in their official capacity are also protected by the [Eleventh] Amendment" to the same extent as the state itself. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (citing *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985)). As a result, Gainsburg can only proceed against Doyle in his official capacity if: (1) the state "waive[d] its Eleventh Amendment sovereign immunity and consents to suit in federal court," *id.* at 1278 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985)); (2) "Congress, acting pursuant to § 5 of the Fourteenth Amendment, abrogate[d] [the] state's Eleventh Amendment sovereign immunity by expressing an unequivocal intent to do so," *ibid.* (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55–73 (1996)); or (3) the official is "sued for prospective injunctive relief to end a continuing violation of federal law," *ibid.* (first citing *Seminole Tribe*, 517 U.S. at 73; and then citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)).

Starting with Gainsburg's Fourteenth Amendment claims (Counts II & III), "Congress has not abrogated Eleventh Amendment immunity in 42 U.S.C. [§ 1983] cases, and Florida has not waived its Eleventh Amendment immunity in federal civil rights actions." *Henry*, 701 F. App'x at 880 (first

---

[5] *See also Lewis*, 581 U.S. at 163 ("Defendants in an official-capacity action may assert sovereign immunity. An officer in an individual-capacity action, on the other hand, may be able to assert *personal* immunity defenses, such as, for example, absolute prosecutorial immunity in certain circumstances." (first citing *Kentucky v. Graham*, 473 U.S. 159, 167 (1985); and then citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 342–44 (1974))).

citing *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. Unit A June 1981); then citing *Gamble v. Fla. Dep't of Health & Rehab. Servs.*, 779 F.2d 1509, 1511 (11th Cir. 1986); and then citing *Fincher v. Fla. Dep't of Lab. & Emp't Sec. Unemp't Apps. Comm'n*, 798 F.2d 1371, 1372 (11th Cir. 1986)); *see also McBride v. Murray*, 2006 WL 73452, at *2 (N.D. Ga. Mar. 17, 2006) (noting that 42 U.S.C. § 1983 provides the "only . . . statutory vehicle" through which a "plaintiff may seek to vindicate his [Fourteenth] Amendment rights"). Since Count III seeks damages from a state official who is immune from a damages suit, *see Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994) ("Under the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court." (citing *Graham*, 473 U.S. at 169)), it must be **DISMISSED** as to Doyle.

Count II, by contrast, seeks only equitable relief. *See* Compl. at 61 ("[T]he Plaintiff requests declaratory and injunctive relief for . . . Joshua Doyle . . . violat[ing] the Equal Protection Clause[.]" (cleaned up)). That's also the case for Gainsburg's ADA claim in Count IV. *Id.* at 69 ("[T]he Plaintiff seeks injunctive relief for the violation of Title II of [the] Americans with Disabilities Act[.]" (cleaned up)). Pursuant to the "legal fiction established in *Ex Parte Young*," *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1288 (11th Cir. 2015) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)), "a suit requesting injunctive relief on a prospective basis for an ongoing constitutional violation against a state official in his or her official capacity is not a suit against the state, and thus does not violate the Eleventh Amendment." *Henry*, 707 F. App'x at 880–81 (citing *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011)). In Gainsburg's view, his requested relief—"an injunction against [the Florida Bar] ordering it and its agents and its servants, to cease engaging in these violative practices against Plaintiff," Compl. at 20—is prospective because it relates to his (formerly) "pending case in front of [the] Florida Supreme Court," *i.e.*, the appeal of his *seventh* petition for permanent retirement, Resp. to Fla. Bar Defs.' MTD at 8; *see also Gainsburg II*, 2024 WL 48816, at *1 (denying review of that petition on January 4, 2024).

Fortunately, we needn't decide the "much thornier" question of whether Gainsburg can bring this claim under *Ex parte Young* because the Florida Bar Defendants "contend that we can dismiss this lawsuit either because the Eleventh Amendment deprives us of jurisdiction to consider it, or because the plaintiffs' complaint fails to state a claim upon which relief can be granted." *McClendon*, 261 F.3d at 1257–59; *see also* Fla. Bar Defs.' MTD at 1 (seeking dismissal *both* because of our "lack of subject matter jurisdiction" *and* because Gainsburg "fail[ed] to state a claim"). We'll therefore "exercise our discretion to look around the Eleventh Amendment issues involving the state official defendants to the merits" because, for three reasons, Doyle's *other* jurisdictional defense and the "merits issues are open and shut in favor of the defendants[.]" *McClendon*, 261 F.3d at 1259.

### i. The *Rooker-Feldman* Doctrine

*First*, even putting Eleventh Amendment immunity aside, we still lack subject-matter jurisdiction over Gainsburg's Equal Protection and ADA claims for equitable relief against Doyle under the *Rooker-Feldman* doctrine,[6] "a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments." *Alvarez v. Att'y Gen. of Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012).

Under *Rooker-Feldman*, "a party losing in state court is barred from seeking what in substance would be appellate review of the state court judgment in a United States District Court based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994). "Allowing federal district courts to alter or directly review the judgment of state courts would violate both of those jurisdictional grants." *Behr v. Campbell*, 8 F.4th 1206, 1210 (11th Cir. 2021). In other words, the doctrine "means that federal district courts cannot review or reject state court judgments rendered before the district court litigation began." *Id.* at 1212. A district court also "engages in impermissible appellate review when it entertains a claim that the litigants did

---

[6] This doctrine takes its name from two Supreme Court decisions: *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); and *D.C. Ct. of App. v. Feldman*, 460 U.S. 462 (1983).

not argue in the state court, but is inextricably intertwined with the state court judgment," assuming "the party had a reasonable opportunity to raise his federal claims in the state court proceedings." *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997) (first citing *D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 483 n.16 (1983); and then citing *Wood v. Orange County*, 715 F.2d 1543, 1547 (11th Cir. 1983)).

*Rooker-Feldman* prevents federal district courts from reviewing "a state court's final judgment in a bar admission matter . . . in particular cases arising out of judicial proceedings[.]" *Feldman*, 460 U.S. at 486; *see also Dale*, 121 F.3d at 627 ("[I]t is clear that the *Rooker-Feldman* doctrine forbids frustrated Florida bar applicants from seeking an effective reversal of the Florida Supreme Court's decision in federal district court."). And, while the doctrine doesn't prevent us from exercising jurisdiction over "*general* challenges to state bar rules," *Uberoi*, 819 F.3d at 1314 (emphasis added) (citing *Feldman*, 460 U.S. at 486), it does preclude us from reviewing a "claim, based on constitutional or other grounds, that a state court's judicial decision in a particular case has resulted in the unlawful denial of admission to a particular bar applicant," *Dale*, 121 F.3d at 626–27 (quoting *Berman v. Fla. Bd. of Bar Exam'rs*, 794 F.2d 1529, 1530 (11th Cir. 1986)).[7]

We think that rule applies with equal force to the Florida Bar's denial of Gainsburg's retirement petition. On this issue, we find the Eleventh Circuit's opinion in *Dale* instructive. The plaintiff there brought an ADA claim in federal court against the Florida Board of Bar Examiners and its executive director for "hindering . . . his admission to the Florida Bar on account of an alleged disability." *Id.* at 625. The district court found that *Rooker-Feldman* precluded federal jurisdiction because the Supreme

---

[7] *Rooker-Feldman* thus wouldn't (standing alone) bar us from reviewing Gainsburg's claims against the Institutional Defendants under the First Amendment (Count I), the separation-of-powers doctrine (Count V), the Sherman Act (Count VI), or the RICO Act (Count VII). *See Wood*, 715 F.2d at 1546 ("[A] district court could properly assume jurisdiction over the plaintiffs' broadside challenge to the constitutionality of the accreditation requirement because this general challenge did not 'require review of a judicial decision in a particular case.'" (quoting *Feldman*, 460 U.S. at 486)). But, as we've said, those claims are separately barred by the Eleventh Amendment. *See ante*, at 5–9.

Court of Florida had "confirmed the [Board's] recommendation and admitted [the plaintiff] to the Florida Bar[.]" *Ibid.* The Eleventh Circuit affirmed, holding that "the confirmation by the Florida Supreme Court of the [Board's] recommendation to accept [an] application to the Florida Bar . . . is a judicial proceeding that constitutes a case and controversy"—and thus implicated *Rooker-Feldman. Id.* at 626 (citing *Feldman*, 460 U.S. at 478–79); *see also Johnson v. Sup. Ct. of Ill.*, 165 F.3d 1140, 1141 (7th Cir. 1999) ("[T]he *Rooker-Feldman* doctrine eliminates most avenues of attack on attorney discipline.").

Retirement petitions are no different. As with bar admissions, the Florida Supreme Court reviews the Florida Bar's denial of a lawyer's retirement petition. *See* FLA. BAR R. 1-3.5(g) ("Action of the executive director or board of governors denying a petition for retirement or reinstatement from retirement may be reviewed on petition to the Supreme Court of Florida."). That review is therefore "a judicial proceeding," *Dale*, 121 F.3d at 626, because "the consideration of the petition by the Supreme Court, the body which has authority itself by its own act to give the relief sought, makes the proceeding adversary in the sense of a true case or controversy," *Feldman*, 460 U.S. at 478–79 (quoting *In re Summers*, 325 U.S. 561, 567–68 (1945)). And Gainsburg's claims here necessarily (and impermissibly) require us "to review the application of [FLA. BAR R. 1-3.5] to the particular factual circumstances of [his] case." *Dale*, 121 F.3d at 627. By requesting injunctive relief—presumably to force the Florida Bar to allow him to "permanently retire from the practice of Florida law," Compl. at 42—Gainsburg "directly asks for an order from the district court vacating the Florida Supreme Court's final judgment" denying his retirement petition, *Castro v. Lewis*, 777 F. App'x 401, 406 (11th Cir. 2019). And we can't give him that. *See In re Summers*, 325 U.S. at 568–69 ("When the claim is made in a state court and a denial of the right is made by judicial order, it is a case which may be reviewed under Article III of the Constitution when federal questions are raised and proper steps taken to that end, [only] in [the U.S. Supreme] Court.").

14

In his response, Gainsburg offers two arguments—both meritless—for his view that we shouldn't apply *Rooker-Feldman* here.

*One*, Gainsburg says that *Rooker-Feldman* doesn't bar his claims against Doyle because he didn't "have a reasonable opportunity to raise federal claims in a state court action[.]" Resp. to Fla. Bar Defs.' MTD at 8. We disagree.

Florida Bar Rule 1-3.5(g) authorized Gainsburg to ask the Supreme Court of Florida to review the denial of his petition. And Gainsburg was indisputably permitted to advance his federal injunctive-relief claims in that proceeding. *See*, *e.g.*, *Thompson v. Fla. Bar*, 526 F. Supp. 2d 1264, 1275 (S.D. Fla. 2007) (Jordan, J.) ("The Florida Supreme Court is able to hear and address any federal constitutional claims asserted by [the plaintiff] in the disciplinary proceedings if those claims have been unsuccessful before the referee, the grievance committee, or the Board of Governors."); *Doe v. Fla. Bar*, 630 F.3d 1336, 1339–40 (11th Cir. 2011) ("Having exhausted her internal appeals [with the Florida Bar], [the plaintiff] sought review in the Florida Supreme Court, filing a twenty-five page petition with thirty-seven appendices attached, again contending that the confidential peer review procedures amounted to a *denial of due process*." (emphasis added)). Because Gainsburg "could have complained"—in his state-court petition to the Florida Supreme Court—of the allegedly discriminatory denial of his request to retire, he cannot now "seek[ ] an effective reversal of the Florida Supreme Court's decision in federal district court" by raising that argument for the first time here. *Dale*, 121 F.3d at 627; *see also ibid.* (finding that the plaintiff "had an opportunity to raise his claim in the state court proceeding" because "Article 3, § 3(d) of the Florida Supreme Court's Rules Relating to Admission to the Bar allows an applicant to file an answer to the Specifications" and because the plaintiff's "answer could have complained that the [Bar's] consideration of his alleged mental illness violated the ADA"); *Feldman*, 460 U.S. at 482 n.16 ("By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in any federal court.").

Nor is it of any matter that Gainsburg "does not seek the District Court to opine or re-decide previous judgments and orders of the State Court," since (in his view) his "Complaint does not dispute judicial decisions of the past, but rather . . . is a Complaint concerning current and ongoing violative behavior by the [Florida Bar] Defendants[.]" Resp. to Fla. Bar Defs.' MTD at 13. In *Dale*, the plaintiff also sought to distinguish his ADA claim from any "review of the Florida Bar admission process." 141 F.3d at 626. The Eleventh Circuit rejected that distinction, holding that Dale's federal suit was "inextricably intertwined with the state judicial proceeding" because "[r]esolution of Dale's ADA claim would require the federal district court to review the application of [the Board's] rules to the particular factual circumstances of Dale's case." *Id.* at 627. So too here. Resolving Gainsburg's claims against Doyle—which "could have been decided by the state court," *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1288 (11th Cir. 2018); *see also* Compl. at 69 ("Defendant(s) have *always* had full knowledge of the Plaintiff's disability for the alleged facts in this complaint." (emphasis added))— would *both* impel us to delve into the Bar's decision to reject Gainsburg's petition *and* (potentially) require us to disturb the Supreme Court of Florida's confirmation of that decision. *Rooker-Feldman* prevents us from doing either. *See Castro*, 777 F. App'x at 405 ("By asking the federal court to review the Board's inquiry into Castro's eligibility for readmission and the recommendation it gave to the Florida Supreme Court, Castro's claims are inextricably intertwined with the state court's decision on his application for readmission.").

*Two*, Gainsburg contends that we cannot apply *Rooker-Feldman* here because he had "a pending case in front of [the] Florida Supreme Court"—*viz.*, the appeal of his seventh retirement petition, *see generally* Second Petition for Review—when this case was filed, *see* Resp. to Fla. Bar Defs.' MTD at 8. Gainsburg is correct that *Rooker-Feldman* limits a federal district court's jurisdiction over "*final* state-court judgments," *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (emphasis added), and that "proceedings have not ended for purposes of *Rooker-Feldman* when an appeal from the state court judgment remains

16

pending at the time the plaintiff commences the federal court action that complains of injuries caused by the state court judgment," *Nicholson v. Shafe*, 558 F.3d 1266, 1279 (11th Cir. 2009). But, while the appeal of Gainsburg's *seventh* petition for retirement was pending in the Supreme Court of Florida when he filed this case on October 2, 2023, the appeal of his *first* petition had been denied by then. *See Gainsburg I*, 2023 WL 4539118, at *1 (decided on July 14, 2023). And that petition for review was likewise based on the Florida Bar's refusal to let Gainsburg retire, *see* First Petition for Review of Denial of Petition for Permanent Retirement [ECF No. 12-4] ¶ 20 ("Petition[er] simply asks to be permitted to permanently retire from The Florida Bar . . . . There is no reasonable basis to deny such a request.").

A plaintiff may not "piggy-back[ ] his attack on [a] state court judgment with challenges to [other] judgments in an attempt to avoid the harsh implications of the *Rooker–Feldman* doctrine." *Tindall v. Gibbons*, 156 F. Supp. 2d 1292, 1300 (M.D. Fla. 2001) (Moody, J.) (citing *Tindall v. Fla. Bar*, 1997 WL 689636 (M.D. Fla. 1997) (Kovachevich, J.), *aff'd*, 163 F.3d 1358 (11th Cir. 1998)); *see also Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1340 (S.D. Fla. 1999) (Davis, J.) ("Like res judicata and collateral estoppel, the *Rooker-Feldman* doctrine is intended to ensure that litigants do not take multiple bites from the same apple." (cleaned up)). So, even though Gainsburg ostensibly "now complain[s]" of the denial of "his September 11, 2023 Petition for Retirement," Compl. at 3, we couldn't grant Gainsburg injunctive relief on his seventh petition—thus forcing the Florida Bar to allow him to retire—without *also* rejecting the Supreme Court of Florida's July 14, 2023, ruling in *Gainsburg I*, which was a final "state court judgment[ ] rendered before the district court litigation began." *Behr*, 8 F.4th at 1210; *see also Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996) ("If a federal district court were now to hold in [the plaintiff's] favor on his federal claim, that holding would 'effectively nullify' the state court's judgment[.]" (quoting *Liedel v. Juvenile Ct. of Madison Cnty.*, 891 F.2d 1542, 1545 (11th Cir. 1990))). Since the "crucial question in determining the applicability of *Rooker-Feldman* is whether the relief requested

of the federal court would effectively reverse or void the state court's ruling," *Bosdorf*, 79 F. Supp. 2d at 1339 (citing *Olson Farms, Inc. v. Barbosa*, 134 F.3d 933, 936 (9th Cir. 1998))—and because granting Gainsburg relief *would* vitiate the Supreme Court of Florida's ruling in *Gainsburg I*—*Rooker-Feldman* bars us from exercising jurisdiction over these claims.

After all, were it not for the Supreme Court of Florida's denial of Gainsburg's *first* petition, he wouldn't have needed to file any subsequent petitions. Gainsburg, therefore, remains a "state-court loser[ ] complaining of injuries *caused* by state-court judgments rendered before the district court proceedings commenced[.]" *Exxon Mobil Corp. v. Saudi Basic Inds. Corp.*, 544 U.S. 280, 284 (2005). Whatever Gainsburg tries to call his claims against Doyle, in short, they're "inextricably intertwined with the [Supreme Court of Florida's] decision[ ], in judicial proceedings, to deny [Gainsburg's first] petition[ ]"—and thus fall outside our jurisdiction, *Nicholson*, 558 F.3d at 1271 (quoting *Feldman*, 460 U.S. at 486–87); *see also Behr*, 8 F.4th at 1211 ("[*Rooker-Feldman*] bars all appeals of state court judgments—whether the plaintiff admits to filing a direct appeal of the judgment *or tries to call the appeal something else*." (emphasis added)). And, without jurisdiction, we are "powerless to continue." *Am. Tobacco*, 168 F.3d at 410.

### ii. Res Judicata

*Second*, even if that weren't the case, Gainsburg's claims against Doyle for equitable relief are barred by the doctrine of res judicata, which "prevents the relitigation of issues and claims already decided by a competent court." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011); *see also Comm'r v. Sunnen*, 333 U.S. 591, 598 (1948) ("Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel."). As the Florida Bar Defendants make clear, Gainsburg has already "attempted to retire, was denied that status, and appealed the denial, culminating in the Florida Supreme Court's Denial Order" on July 14, 2023. Fla. Bar Defs.' MTD at 8; *see also Gainsburg I*, 2023 WL 4529118, at *1 ("The Petition for Review of Denial of Petition for

Permanent Retirement is hereby denied."). And, since these proceedings in federal court began, the Supreme Court of Florida has also declined to review Gainsburg's seventh retirement petition. *See Gainsburg II*, 2024 WL 48816, at *1 ("The 'Petition for Review of Denial of Petition for Permanent Retirement' is hereby denied."). Both Florida Supreme Court rulings are thus relevant to our preclusion analysis. *See Zikofsky v. Mktg. 10, Inc.*, 904 So. 2d 520, 525 (Fla. 4th DCA 2005) ("Even though he filed the second lawsuit while the first one was still pending, [the plaintiff] cannot avoid the effect of res judicata . . . once the first suit was terminated by the entry of a final judgment[.]" (cleaned up)).

In determining whether "to give res judicata effect to a state court judgment, we must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006). Under Florida law,[8] the defense of res judicata has five elements: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; (4) identity of the quality [or capacity] of the persons for or against whom the claim is made; and (5) the original claim was disposed [of] on the merits." *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1074 (11th Cir. 2013) (cleaned up). Each of these elements has been met here.

*One*, "the thing sued for" is the same across the federal and state cases. In analyzing this prong, Florida law directs us to ask "whether the substantive issue of the claim, rather than the relief sought by the claimant, was the same." *Claim Holding Grp., LLC v. AT&T Mobility, LLC*, 347 So. 3d 412, 414

---

[8] In their Motion to Dismiss, the Florida Bar Defendants (and, therefore, Doyle) analyzed res judicata under the *federal* test. *See* Fla. Bar Defs.' MTD at 8 (citing *Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 892 (11th Cir. 2013)). But, "[i]n considering whether to give preclusive effect to state-court judgments under res judicata or collateral estoppel, the federal court applies the rendering state's law of preclusion." *Strong*, 651 F.3d at 1263 (cleaned up). Still, while we'll apply Florida preclusion law here, we're satisfied that res judicata would apply under either test, as "[a] comparison between Florida rules and federal rules governing claim . . . preclusion reveals that the relevant principles are largely identical." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 764 F.3d 1327, 1337 (11th Cir. 2014).

(Fla. 3d DCA 2022); *see also Diaz v. Moore*, 861 F. Supp. 1041, 1047 n.18 (N.D. Fla. 1994) (Collier, J.) ("[A plaintiff's] request for additional relief in the second action does not take the first judgment out of the scope of res judicata." (citing *Maison Grande Condo. Ass'n, Inc. v. Dorten, Inc.*, 621 So. 2d 762, 764 (Fla. 3d DCA 1993))). As Gainsburg concedes, both this case and *Gainsburg II* "derive from exactly the same alleged misconduct," *Claim Holding*, 347 So. 3d at 414—*viz.*, the supposedly erroneous denial of Gainsburg's seventh petition for retirement, *compare* Reply ¶ 2 [ECF No. 29], *Gainsburg II*, 2024 WL 48816 ("*Gainsburg II* Reply") ("[The Florida Bar] demonstrates a clear discriminatory intent with respect to Plaintiff by abusing the discretionary powers the [Florida Bar] Executive Director [Doyle] was granted in terms of granting retirement to [Florida Bar] members."), *with* Compl. at 10 ("[The Florida Bar] has repeatedly abused its self-granted discretion, to discriminatorily deny the Plaintiff's Petition for Permanent Retirement[.]"). Because Gainsburg asks the court in each action to overrule the Florida Bar's denial of his retirement petition, in "substan[ce,] . . . the thing being sued for in both cases is identical." *Claim Holding*, 347 So. 3d at 414 (cleaned up); *see also Seminole Tribe of Fla. v. State, Dep't of Revenue*, 202 So. 3d 971, 973 (Fla. 1st DCA 2016) ("In both cases, it requested the trial court to find that it cannot be taxed for fuel it purchases off-reservation and uses on-reservation for governmental purposes. Therefore, the identity of the thing being sued for is present."), *appeal denied*, 2017 WL 1533647 (Fla. Apr. 28, 2017).

*Two*, the causes of action are identical. Under Florida's preclusion law, "[t]he general test when 'deciding whether the cause of action is the same is whether the facts or evidence necessary to maintain the suit are the same in both actions.'" *Crescent Shore Condo. Ass'n, Inc. v. Kai*, 330 So. 3d 582, 585 (Fla. 2d DCA 2021) (quoting *U.S. Project Mgmt., Inc. v. Parc Royale E. Dev., Inc.*, 861 So. 2d 74, 76 (Fla. 4th DCA 2003)). And, where *unraised* claims stem from the same "transaction, or series of connected transactions," as the claims the plaintiff actually raised in the prior action, *Signo v. Fla. Farm Bur. Cas. Ins. Co.*, 454 So. 2d 3, 5 (Fla. 4th DCA 1984) (quoting RESTATEMENT (SECOND) ON JUDGMENTS §

24(1)), res judicata prevents a plaintiff from advancing those claims in a later suit, *see Topps v. State*, 865

So. 2d 1253, 1255 (Fla. 2004) ("[R]es judicata bars relitigation in a subsequent cause of action not only

of claims raised, but also claims that could have been raised." (citing *Fla. Dep't of Transp. v. Juliano*, 801

So. 2d 101, 107 (Fla. 2001)).

Here, both *Gainsburg II* and the Complaint's claims against Doyle "arose out of" the Florida

Bar's denial of Gainsburg's "September 11, 2023 Petition for Retirement," Resp. to Fla. Bar Defs.'

MTD at 3; *see also Gainsburg II*, 2024 WL 48816 (denying review of that petition), and its allegedly

discriminatory reasons for doing so, *compare* Compl. at 38 (alleging that Doyle "denied [Gainsburg's

six renewed retirement petitions] without providing Plaintiff or his co-counsel any, written or verbal,

reason for such discretionary or discriminatory denials"), *with Gainsburg II* Reply ¶ 2 (noting Doyle's

"clear discriminatory intent with respect to Plaintiff by abusing the discretionary powers [he] was

granted"). In fact, Gainsburg's seventh petition for retirement (the denial of which formed the basis

of his state-court case in *Gainsburg II*) *explicitly* argued that the Florida Bar was "violating [his] US

Constitutional rights including . . . Equal Protection . . . [and] violations of the Federal ADA." *See*

Second Petition for Review ¶ 28 n.1 (errors in original). And Gainsburg's Reply in that case alleged "a

clear discriminatory intent with respect to [Gainsburg] by abusing the discretionary powers the [Doyle]

was granted in terms of granting retirement to [Florida Bar] members." *Gainsburg II* Reply ¶ 2 (errors

in original). Apparently unmoved by that argument, the Supreme Court of Florida affirmed the Florida

Bar's denial of Gainsburg's seventh petition—"the same subject matter that gave rise to [Gainsburg's]

ADA, civil rights, and equal protection claims" here. *Dean v. Miss. Bd. of Bar Admissions*, 394 F. App'x

172, 176 (5th Cir. 2010).

So, not only were Gainsburg's federal claims "in existence at the time the original complaint

[was] filed [in the Supreme Court of Florida]," *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1299 (11th Cir.

2001) (cleaned up),[9] but they were "actually asserted by supplemental pleadings" in *Gainsburg II*, *ibid.* (cleaned up); *see also Tietig v. Se. Reg'l Constr. Corp.*, 557 So. 2d 98, 99 (Fla. 3d DCA 1990) (applying res judicata to where a claim "both should have been and was actually asserted" in a prior action). Since those claims could (and should) have been brought in the prior action, *see Thompson*, 526 F. Supp. 2d at 1275 ("The Florida Supreme Court is able to hear and address any federal constitutional claims asserted by [the plaintiff] in the disciplinary proceedings if those claims have been unsuccessful before the referee, the grievance committee, or the Board of Governors.")—but *weren't*—Gainsburg cannot pursue them here.

In his Response, which he submitted *before* the Supreme Court of Florida's decision in *Gainsburg II*, Gainsburg noted that res judicata wouldn't apply to a pending case "currently subject to a review by [the] Florida Supreme Court." Resp. to Fla. Bar Defs.' MTD at 4. But that case is no longer "currently subject to a review" because (as we've said) the Supreme Court of Florida has since handed down its decision—which now operates to preclude Gainsburg's claims here. *See Zikofsky*, 904 So. 2d at 525 ("Even though he filed the second lawsuit while the first one was still pending, [the plaintiff] cannot avoid the effect of res judicata . . . once the first suit was terminated by the entry of a final judgment[.]" (cleaned up)); *see also AMEC Civ., LLC v. State, Dep't of Transp.*, 41 So. 3d 235, 243 (Fla. 1st DCA 2010) ("[W]hen a final decree or judgment of a court of competent jurisdiction becomes absolute it puts at rest and entombs in eternal quiescence every justiciable, as well as every actually adjudicated, issue." (quoting *Gordon v. Gordon*, 59 So. 2d 40, 43 (Fla. 1952))).

---

[9] *See also McManus v. City of Gainesville*, 2011 WL 240816, at *2 (N.D. Fla. Jan. 24, 2011) (Paul, J.) ("ADA claims . . . 'accrue when the plaintiff is informed of the discriminatory act.'" (quoting *Everett v. Cobb Cnty. Sch. Dist.*, 138 F.3d 1407, 1409–10 (11th Cir. 1998))); *Rozar v. Mullis*, 85 F.3d 556, 662 (11th Cir. 1996) (noting that an equal-protection claim accrues at the "time the alleged injury was inflicted").

Gainsburg's Response also suggests (albeit while addressing a separate argument) that he shouldn't be deemed to have waived these claims because his opening brief before the Florida Supreme Court in *Gainsburg II* included the following disclaimer:

> While there are US Constitutional and Federal questions of law involving, but not limited to, due process, equal protection, First Amendment concerns about Freedom of Speech and Freedom of Association, Religious Freedom, Americans with Disabilities Act and Sherman Anti-Trust concerns, this court should not consider them in this suit since those claims are in fro[nt] of the Federal Southern District Court, Florida and since this court lacks jurisdiction of such matters, it not need not address or attempt to resolve such through the filing by Petitioner of this Petition to Review the 9/11 Petition.

Resp. to Fla. Bar Defs.' MTD at 9 (quoting Second Petition for Review ¶ 28 n.1). There's a lot wrong with that disclaimer.

For one thing, it's not true that a state court "lacks jurisdiction" over questions of federal law. *See, e.g.*, *Lloyd v. Page*, 474 So. 2d 865 (Fla. 1st DCA 1985) ("[S]tate courts have jurisdiction concurrent with federal courts to enforce federal cases arising under federal law unless Congress has specifically provided to the contrary."); *see also Furtado v. Yun Chung Law*, 51 So. 3d 1269, 1277–78 (Fla. 4th DCA 2011) (adjudicating an ADA claim in state court). For another, Gainsburg cannot preserve his federal claims by expressly *acknowledging* their existence (and then simultaneously reserving them for a later day), since res judicata "precludes litigation of issues tried in a prior suit *and those issues which could have been there litigated*[.]" *Signo*, 454 So. 2d at 6 (emphasis added); *see also Tyson v. Viacom*, 890 So. 2d 1205, 1210 (Fla. 4th DCA 2005) ("The doctrine of splitting a cause of action is related to res judicata in that it requires that all damages sustained or accruing to one as a result of a single wrongful act must be claimed and recovered in one action or not at all."). All Gainsburg's "disclaimer" does is confirm that the claims he's asserting here *could have* been brought when he first litigated this cause of action in state court.

*Three*, we have identity between the parties in both actions. Res judicata applies only where both actions are between "the same parties or their privies[.]" *Kimbrell v. Paige*, 448 So. 2d 1009, 1012

(Fla. 1984). Although Doyle wasn't explicitly named as a party to the state-court action, the fact that he's being sued here in his *official* capacity puts him in privity with the Florida Bar (the state-court defendant) for preclusion purposes. *See, e.g.*, *Lozman*, 713 F.3d at 1075 n.7 ("[A] government official sued in his or her official capacity is considered to be in privity with the government[.]" (citing 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 131.40(2)(a))); *see also Long v. Inch*, 2019 WL 11666604, at *4 (M.D. Fla. May 19, 2019) (Scriven, J.) ("The individuals named in the federal lawsuit are sued in their official capacity and are in privity with the State of Florida, the defendant in the state-court action." (citing *Welch v. Laney*, 57 F.3d 1004, 1009 (11th Cir. 1995))). And Gainsburg cannot circumvent res judicata as to those defendants who were named in the state-court case (or their privies) by adding in this action some new defendants who weren't (or aren't). *See Lineas Aereas Constarricenses, S.A. v. HTP, Ltd.*, 674 So. 2d 780, 781 (Fla. 3d DCA 1996) ("[T]he earlier case . . . is res judicata to any claim against those defendants named in the earlier case[.]" (first citing *Fincher Motor Sales, Inc. v. Lakin*, 156 So. 2d 672 (Fla. 3d DCA 1963); and then citing *Pendarvis v. Pfeifer*, 182 So. 307 (Fla. 1938))); *see also Ardis v. Anderson*, 662 F. App'x 729, 732 (11th Cir. 2016) ("[T]he Eleventh Circuit has recognized that a party 'may not avoid the application of re[s] judicata by adding new parties.'" (quoting *Endsley v. City of Macon*, 321 F. App'x 811, 814 (11th Cir. 2008) (cleaned up))).

*Four*, there's "identity of the quality of the person for or against whom the claim is made," because "the parties in the state action had the incentive to adequately litigate the claims in the same character or capacity as would the parties to the federal action." *McDonald v. Hillsborough Cnty. Sch. Bd.*, 821 F.2d 1563, 1566 (11th Cir. 1987). In both cases, Gainsburg had the same incentive to prosecute his claims "because he stood to lose" on his retirement petitions "if he was unsuccessful." *Cox v. Bank of Am. Corp.*, 2021 WL 5631774, at *5 (S.D. Fla. Dec. 1, 2021) (Ruiz, J.). And, since Doyle is being sued in his *official* capacity as an "arm of the state," *Hill v. Dep't of Corr.*, 513 So. 2d 129, 133 (Fla. 1987) (cleaned up); *see also* Compl. at 61, 69 (asserting claims against Doyle only "in his official capacity"),

his incentive to defend the denial of Gainsburg's petition here is identical to the incentive the Florida Bar had when it appeared before Florida's High Court.

*Five*, the Supreme Court of Florida's ruling in each case was a final judgment on the merits "by a court of competent jurisdiction." *Gomez-Ortega v. Dorten, Inc.*, 670 So. 2d 1107, 1108 (Fla. 3d DCA 1996) (cleaned up). Acting as "the body which ha[d] authority itself by its own act to give the relief sought," *In re Summers*, 325 U.S. at 567; *see also* FLA. BAR R. 1-3.5(g) (vesting the Supreme Court of Florida with jurisdiction to review any "[a]ction of the executive director or board of governors denying a petition for retirement"), the Supreme Court of Florida twice declined to grant Gainsburg the relief he was seeking, *see Gainsburg I*, 2023 WL 4539119, at *1; *Gainsburg II*, 2024 WL 48816, at *1. That is "the essence of a judicial proceeding" on the merits. *Zisser v. Fla. Bar*, 747 F. Supp. 2d 1303, 1314 (M.D. Fla. 2010) (Howard, J.) (quoting *Feldman*, 460 U.S. at 481). And it's of no moment that those opinions were "terse Order[s] merely stating that [his] petition[s] w[ere] denied[.]" *Ibid.*; *cf. Gainsburg I*, 2023 WL 4539119, at *1 ("The Petition for Review of Denial of Petition for Permanent Retirement is hereby denied."); *Gainsburg II*, 2024 WL 48816, at *1 ("The 'Petition for Review of Denial of Petition for Permanent Retirement' is hereby denied."). What matters is that, "[a]fter considering the issues and factual allegations which were presented in [Gainsburg's] briefs," *Williams v. Sch. Bd. of Miami-Dade Cnty.*, 2008 WL 11333056, at *2 (S.D. Fla. Aug. 20, 2008) (Huck, J.), the state court "determined as a legal matter that the plaintiff was not entitled to the relief sought," *Zisser*, F. Supp. 2d at 1314; *see also id.* at 1315 ("[T]he Florida Supreme Court's dismissal of the plaintiff's petition 'without opinion or statement of reasons' was a final judgment on the merits." (quoting *Berman*, 794 F.2d at 1530)); *accord Diaz*, 861 F. Supp. at 1046 n.15 (finding that, despite "the Florida Supreme Court's decision to issue the order without opinion," the ruling was nonetheless "on the merits" where "[t]here could be no misunderstanding as to the nature of [the petitioner's] claim or the relief sought" (citing *Feldman*, 460 U.S. at 478–79)). That's enough to make both *Gainsburg I* and *Gainburg II* "final

judgment[s] on the merits." *Williams*, 2008 WL 11333056, at *2 (citing *Jones v. McDonough*, 2006 WL 2860928, at *12 (M.D. Fla. Oct. 4, 2006) (Melton, J.)).

Having found that each of the five res judicata factors has been met here, *see Lozman*, 713 F.3d at 1074, we're satisfied that Gainsburg's injunctive-relief claims against Doyle (Counts II & IV) are barred by the doctrine of res judicata.[10]

### iii.   Failure to State a Claim

*Third*, Gainsburg also fails to adequately plead his claims for injunctive relief under the Fourteenth Amendment and the ADA.

As the Supreme Court of Florida's brief rightfully notes, much of Gainsburg's Complaint is "typical of a 'shotgun' pleading." Sup. Ct. Fla. Resp. at 8; *see also McWhorter v. Miller, Einhouse, Rymer & Boyd, Inc.*, 2009 WL 92846, at *2 (M.D. Fla. Jan. 14, 2009) (Presnell, J.) (noting that a "duty to intervene *sua sponte* applies [when] the court is faced with a shotgun complaint" (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001))). That's certainly true of the Fourteenth Amendment claim Gainsburg

---

[10] This analysis applies with equal force to the as-applied claim for injunctive relief Gainsburg asserts against the Florida Bar in Count II. *See Ricketts v. Vill. of Miami Shores*, 232 So. 3d 1095, 1097–98 (Fla. 3d DCA 2017) ("Any attempt to present an 'as-applied' constitutional challenge to the statute, as opposed to a 'facial' constitutional challenge, is barred as a matter of res judicata . . . even to those matters which were not, but could properly have been, raised in a prior action between the parties[.]" (first citing *Kirby v. City of Archer*, 790 So. 2d 1214 (Fla. 1st DCA 2001); then citing *Charles v. Citizens Prop. Ins. Corp.*, 199 So. 3d 495 (Fla. 3d DCA 2016); and then citing *Holiday Isle Resort & Marina Ass'n v. Monroe County*, 582 So. 2d 721 (Fla. 3d DCA 1991))). But res judicata doesn't preclude Gainsburg from advancing his facial challenges against the Institutional Defendants in Counts I, V, VI, and VII. *See Wilson v. County of Orange*, 881 So. 2d 625, 633 (Fla. 5th DCA 2004) (holding that res judicata "does not bar *facial* challenges that *could have* been raised," but were not raised, in the previous action (emphases added) (citing *Seminole Ent., Inc. v. City of Casselberry*, 866 So. 2d 1242 (Fla. 5th DCA 2004))). Nor does it prevent Gainsburg from asserting his *damages* claim against the Florida Bar Defendants in Count III. *See Healy v. Town of Pembroke Park*, 831 F.2d 989, 992 (11th Cir. 1987) ("If the court of the first proceeding is unable to adjudicate certain claims for jurisdictional reasons, then those claims are not barred in a subsequent suit." (quoting *Olmstead v. Amoco Oil*, 725 F.2d 627, 632 (11th Cir.1984))). Finally, res judicata would not bar Gainsburg's claims against Gonzalez (in Counts II & III), since there's no privity between the Florida Bar (the state-court defendant) and "a government official sued in . . . her individual capacity[.]" *Lozman*, 713 F.3d at 1075 n.7 (cleaned up).

pleads in Count II, which "fails to separate into a different count each cause of action." *Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019).

Count II improperly "commingle[s] separate theories of liability" under the Equal Protection Clause. *Dixon v. McNesby*, 2009 WL 10674252, at *3 (N.D. Fla. Jan. 6, 2009) (Vinson, J.) (cleaned up). Gainsburg begins Count II by alleging that he's a member of "a protected class under the American's [sic] with Disability Act, as well as a member of both the Rastafarian movement and a Hebrew," Compl. at 62 (errors in original), suggesting that his "selective enforcement" claim, *id.* at 58, is premised on his receiving "differential treatment [on the basis of] impermissible considerations, such as race [or] religion," *Lozman v. City of Rivera Beach*, 39 F. Supp. 3d 1392, 1411 (S.D. Fla. Aug. 19, 2014) (Hurley, J.) (citing *Harlen Assocs. Inc. v. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)). In that same count, however, Gainsburg *also* says that he "may bring a 'class of one' equal protection claim[.]" Compl. at 66 (first citing U.S. CONST. amnd. XIV; and then citing *Apatow v. Town of Stratford*, 2023 WL 122038 (D. Conn. Jan. 6, 2023)). But, unlike a race- or religion-based discrimination claim, a class-of-one claim asserts that the plaintiff was "discriminated against on an *individual* basis, rather than as [a] member of a particular group[.]" *Lozman*, 39 F. Supp. 3d at 1413 (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Regardless, Gainsburg fails to state a claim under *either* theory. To plead a viable equal-protection claim on a class-of-one theory, a plaintiff must usually "identify comparators in the pleading in order to show intentional, discriminatory treatment different from others similarly situated." *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1340 (S.D. Fla. 2014) (Altonaga, J.); *see also Rebalko v. City of Coral Springs*, 552 F. Supp. 3d 1285, 1323 (S.D. Fla. 2020) (Altman, J.) ("[T]he Eleventh Circuit has consistently dismissed 'class of one' claims when, as here, the complaint identifies no comparator." (first citing *Watkins v. Cent. Broward Reg'l Park*, 799 F. App'x 659, 664 (11th Cir. 2020); then citing *Carruth v. Bentley*, 942 F.3d 1047, 1059 (11th Cir. 2019); and then citing *Jordan v. Sec'y, Fla. Dep't of*

*Children & Family Servs.*, 723 F. App'x 690, 693 (11th Cir. 2018))); *see also Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1233 (11th Cir. 2022) (affirming dismissal of class-of-one claim where the plaintiff "did not demonstrate that its comparators were similarly situated in all relevant respects" (citing *PBT Real Estate, LLC v. Town of Palm Beach*, 988 F.3d 1274, 1285 (11th Cir. 2021))).

Gainsburg only alleges that Doyle "has granted all petitions for retirement, for members of [the Florida Bar], in similar circumstances." Compl. at 58. That won't do. The Eleventh Circuit has repeatedly "emphasized that plaintiffs are not permitted simply to rely on broad generalities in identifying a comparator." *Kessler v. City of Key West*, 2022 WL 590892, at *4 (11th Cir. Feb. 28, 2022) (quoting *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1204 (11th Cir. 2007)); *see also Chabad Chayil*, 48 F.4th at 1233 ("We apply the similarly situated requirement 'with rigor.'" (quoting *Griffin Indus.*, 496 F.3d at 1207)). Class-of-one plaintiffs must, instead, show that a comparator is "*prima facie* identical in all relevant respects." *Chabad Chayil*, 48 F.4th at 1233 (quoting *PBT Real Estate*, 988 F.3d at 1285); *see also Douglas Asphalt Co. v. Qore, Inc.* 541 F.3d 1269, 1275 (11th Cir. 2008) (explaining that the complaint must plausibly allege that "the comparator was similarly situated 'in light of all the factors that would be relevant to an objectively reasonable governmental decisionmaker'" (quoting *Griffin Indus.*, 496 F.3d at 1207)). Since Gainsburg tells us nothing about these *other* Florida Bar members—and because he gives us no information from which we might reasonably infer that they're similarly situated to him in all material respects—his Complaint fails to plausibly establish a violation of his equal-protection rights on a class-of-one theory.

And, while identifying "a comparator [who is] similarly situated" *isn't* necessary to state an equal-protection claim on a theory of class-based discrimination, a plaintiff asserting a race- or religion-based claim must still plausibly allege "that (1) 'he is similarly situated with other persons who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." *Williams v. Hillman*, 2008 WL 11425746, at *5 (S.D. Ala. June 17,

2008) (quoting *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001)); *see also Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) ("It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.'" (quoting *Twombly*, 550 U.S. at 556)). Gainsburg falters at the first step because he hasn't said that he's similarly situated to *anyone*—much less to persons who "received more favorable treatment."

But "[e]ven if we assume that [Gainsburg] has plausibly alleged the first element of an equal protection claim, he has not plausibly alleged the second: that any disparate treatment he received was based on a constitutionally protected interest." *Jackson v. Brewton*, 595 F. App'x 939, 943 (11th Cir. 2014). Nowhere in Count II does Gainsburg allege any facts that plausibly establish discriminatory animus—*i.e.*, animus directed at a protected trait. *See generally* Compl. at 58–61. Nor does he ever suggest that his retirement petition was denied *because of* his race or religion. And, although he claims that "the Defendant[s] have chosen not to prosecute . . . members [of] a different socioeconomic class, religion, and/or sexual orientation," *id.* at 60, he doesn't allege that those decisions were made "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group," *Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1297 (11th Cir. 2012) (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)); *see also Iqbal*, 556 U.S. at 667 ("[R]espondent must plead sufficient factual matter to show that petitioners adopted and implemented the detention policies at issue not for a neutral, investigative reason but for the purpose of discriminating on account of race, religion, or national origin.").

Devoid of any relevant factual allegations, Gainsburg's equal-protection claim is composed of "no more than conclusions," which "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678. It therefore fails as *either* a class-of-one claim *or* a protected-class claim.

He also fails to plausibly allege that Doyle "engaged in the actions deemed to violate Title II of the Americans with Disabilities Act." Compl. at 68. To state a claim under Title II, a plaintiff must

allege "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007). Gainsburg doesn't meet the first element of his ADA claim because he doesn't allege any facts from which we might reasonably infer that he qualifies as an "individual with a disability" under the ADA. Instead, he says only that he "is a protected class under the American's with Disability Act[.]" Compl. at 58 (errors in original). That's plainly insufficient to state a valid claim. *See, e.g.*, *Rohttis v. Sch. Dist. of Lee Cnty.*, 2022 WL 523605, at *7 (M.D. Fla. Feb. 22, 2022) (Steele, J.) ("[C]onclusory allegation[s] regarding disability do[ ] not support a claim under the . . . ADA." (cleaned up)); *Root v. Menz*, 2022 WL 17828601, at *2 (S.D. Fla. Dec. 21, 2022) (Moore, J.) ("[T]he conclusory statement that 'plaintiff is a qualified individual with a disability[,]' . . . unsupported by any facts, is not sufficient to state a claim under the ADA." (cleaned up)). Gainsburg's ADA claim thus amounts to nothing more than an "unadorned, the-defendant-unlawfully-harmed-me accusation," which fails to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

* * *

For all these reasons, we **DISMISS** Counts II, III, and IV as to Doyle in his official capacity.

### b.  Gainsburg's Claims against Gonzalez in her *Individual* Capacity

Gainsburg also alleges in Counts II and III that Gonzalez, in her "personal capacity," "engaged in selective prosecution, resulting in a violation of the Equal Protection Clause." Compl. at 61 (cleaned up). Because Gonzales has been sued in her individual capacity,[11] she cannot rely on the Eleventh

---

[11] Despite asserting these claims against Gonzalez in her individual capacity, Gainsburg occasionally refers to actions Gonzalez took "in her official capacity." *See* Compl. at 62 ("Linda Gonzalez, Esq., in her official capacity, refused to settle with the Plaintiff and cease her unjustified persecution of Plaintiff[.]"); *ibid.* ("Linda Gonzalez, Esq., holds complete control over the allegations she writes

Amendment for immunity. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991) ("[S]tate officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits[.]").

But Gonzalez *is* immune for a separate reason—because she's a prosecutor. "Prosecutors enjoy absolute immunity from civil suit for acts within the scope of their official duties, including suits brought pursuant to 42 U.S.C. § 1983." *Kivisto v. Soifer*, 2013 WL 5534234, at *2 (S.D. Fla. Oct. 7, 2013) (Cohn, J.) (citing *Rehberg v. Paulk*, 611 F.3d 828, 837–38 (11th Cir. 2010), *aff'd*, 566 U.S. 356 (2012)). This immunity extends "to the prosecutorial function of bar counsel, who serve as an arm of the Florida Supreme Court, with respect to disciplinary proceedings." *Ibid.* (first citing *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993); and then citing *Mueller v. Fla. Bar*, 390 So. 2d 449, 452–53 (Fla. 4th DCA 1980)). Prosecutorial immunity "does not apply [only] when the prosecutor acts outside the ambit of activities intimately associated with the judicial process." *Hart v. Hodges*, 587 F.3d 1288, 1296 (11th Cir. 2009).

Gonzalez contends that "the allegations made by . . . Gainsburg relate to the prosecution of the disciplinary proceedings by the Florida Bar Defendants and demonstrate nothing other than consistence with the performance of official duties." Fla. Bar Defs.' MTD at 10–11. We agree. Gainsburg's allegations as to Gonzalez stem directly from her role as an "agent[ ] of the Florida Supreme Court acting in disciplinary proceedings." *Watson v. Fla. Jud. Qualifications Comm'n*, 746 F. App'x 821, 826 (11th Cir. 2018) (citing *Carroll*, 984 F.2d at 393); *see also* Compl. at 63 ("Linda Gonzalez

---

within a formal complaint."). These passages make us question whether Gainsburg also meant to sue Gonzalez in her official capacity. If he did, then Counts II and III would separately fail as to Gonzalez for the same reasons they failed as to Doyle. *See ante*, at 10–30. Additionally, Gainsburg's failure to "specify whether a defendant is sued in their individual or official capacities, or both," would render the Complaint "a deficient shotgun pleading"—a defect that would likewise justify dismissal. *Pinkston v. Univ. of S. Fla. Bd. of Trs.*, 2016 WL 3196474, at *6 (M.D. Fla. June 9, 2016) (Covington, J.) (cleaned up).

. . . has complete control to move a complaint against the P[laintiff] to the grievance committee."); *id.* at 64 ("Linda Gonzalez . . . has chosen to add violations against the P[laintiff] when he attempted to exercise his constitutional rights and when he expressed his opinion on his adversarial beliefs about [the Florida Bar].""). Since nothing in the Complaint suggests that Gonzalez was acting outside "her function as an advocate for the government," *Rivera v. Leal*, 359 F.3d 1350, 1353 (11th Cir. 2007), she's immune from Gainsburg's claims. We thus **DISMISS** Counts II and III as to Gonzalez as well.

* * *

Having dismissed each of Gainsburg's claims, we must now decide whether to do so with or without prejudice. The Defendants say that "it is appropriate to dismiss a complaint without leave to amend when it is apparent, as it is here, that any attempt at amendment would be futile." Fla. Bar Defs.' MTD at 11 (citing *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1206 (11th Cir. 2003)); *accord* Sup. Ct. Fla. MTD at 14–15. Although we understand the Defendants' desire to discourage vexatious litigation, we cannot grant their request just yet.

Generally, "when a more carefully drafted complaint might state a claim, a pro se litigant 'must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.'" *Alberto v. Sec., Fla. Dep't of Corr.*, 770 F. App'x 467, 469 (11th Cir. 2019) (quoting *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018)). We may, however, "properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile . . . [such as] 'when the complaint as amended is still subject to dismissal.'" *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (first citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); and then quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)).

We'll start with the claims we *can* dismiss with prejudice. Because amendment of claims that are barred by res judicata "would be futile," *Haney v. Abdallah*, 2013 WL 5313402, at *3 (S.D. Fla. Sept. 20, 2013) (Marra, J.); *see also Brown v. Comcast Cablevision of Tallahassee*, 134 F. App'x 423, 424 (11th Cir.

2005) ("[T]he district court did not err by finding that the present federal action was barred based on res judicata. Accordingly, we affirm its dismissal with prejudice."), we **DISMISS** *with prejudice* Counts II and IV as to Doyle and Count II as to the Florida Bar. And, because Gonzalez "is immune from suit for [her] role as [Gainsburg's] prosecutor, the Complaint cannot be amended to state a viable claim" against her. *Pena v. Raich*, 2023 WL 7182226, at *3 (S.D. Fla. Nov. 1, 2023) (Altman, J.) (citing *Myrick v. Sterling*, 2008 WL 595944, at *5 (N.D. Fla. Feb. 28, 2008) (Rodgers, J.). We therefore **DISMISS** *with prejudice* Counts II and III as to Gonzalez. *See Kivisto*, 587 F. App'x at 524 ("[T]he district court may dismiss a complaint with prejudice on the basis of the [prosecutorial] immunity defense if a Rule 12(b)(6) motion demonstrates that the complaint, with all of its allegations accepted as true, indisputably establishes the factual foundation of the defense." (first citing *Rivera*, 359 F.3d at 1350; and then citing *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999))).

At the same time, we **DISMISS** *without prejudice* Gainsburg's remaining claims against Doyle (Count III), the Florida Bar (Counts I, III, V, VI & VII), and the Supreme Court of Florida (Counts I, V & VII). *See, e.g.*, *Dupree v. Owens*, 92 F.4th 999, 1008 (11th Cir. 2024) (noting that, where a claim is dismissed "based on sovereign immunity grounds, the jurisdictional nature of the dismissal requires it to be entered without prejudice"); *Scott v. Frankel*, 606 F. App'x 529, 533 (11th Cir. 2015) ("But a *Rooker-Feldman* dismissal is a dismissal for lack of subject matter jurisdiction, and 'a dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice.'" (quoting *Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (cleaned up))); *Mondo v. Wells Fargo Bank, N.A.*, 2015 WL 12805690, at *1 n.1 (S.D. Fla. Nov. 3, 2015) (Dimitrouleas, J.) (dismissal of a *pro se* complaint for failure to plead adequate facts should be "without prejudice, allowing the pro se Plaintiff an opportunity to amend to attempt to rectify the flaws in the operative complaint").

Still, because Gainsburg can "prove no set of facts" that would entitle him to relief in federal court on the claims that are barred by sovereign immunity or *Rooker-Feldman*, *see Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), we needn't waste the parties' time by allowing Gainsburg to replead those futile claims here, *see Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."). So, if Gainsburg wants to pursue these claims any further, he'll need to do so in state court.

\* \* \*

Accordingly, we hereby **ORDER and ADJUDGE** as follows:

1.  The Supreme Court of Florida's Motion to Dismiss [ECF No. 11] is **GRANTED**.

2.  The Florida Bar Defendants' Motion to Dismiss [ECF No. 12] is **GRANTED**.

3.  The Complaint [ECF No. 1] is:

    a.  **DISMISSED *with prejudice*** as to Linda Gonzalez on Counts II and III.

    b.  **DISMISSED *with prejudice*** as to Joshua Doyle on Counts II and IV, and **DISMISSED *without prejudice*** (but without leave to amend) as to Joshua Doyle on Count III;

    c.  **DISMISSED *with prejudice*** as to the Florida Bar on Count II, and **DISMISSED *without prejudice*** (but without leave to amend) as to the Florida Bar on Counts I, III, V, VI, and VII; and

    d.  **DISMISSED *without prejudice*** (but without leave to amend) as to the Supreme Court of Florida on Counts I, V, and VII.

4.  Any pending motions, including Erwin Rosenberg's Third Motion for Permissive Intervention [ECF No. 43], are **DENIED as moot**. This case shall remain **CLOSED**.

**DONE AND ORDERED** in the Southern District of Florida on June 13, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record
       Barry Gainsburg, *pro se*